## IN THE UNITED STATES DISTRICT COURT
### FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| **ATREYI CHAKRABARTI**, *et al.*, | ) | |
| | ) | |
| **Plaintiffs,** | ) | |
| | ) | |
| v. | ) | **Civil Action No. PJM-21-1945** |
| | ) | |
| **U.S. CITIZENSHIP AND IMMIGRATION** | ) | |
| **SERVICES** , *et al.*, | ) | |
| | ) | |
| **Defendants.** | ) | |
| | ) | |

## DEFENDANTS' OPPOSITION TO MOTION FOR PRELIMINARY INJUNCTION AND MEMORANDUM SUPPORTING MOTION TO TRANSFER VENUE OR DISMISS

## TABLE OF CONTENTS

STATUTORY BACKGROUND .................................................................................2

ARGUMENT ......................................................................................................5

    I.    Plaintiffs' claim should be severed and transferred to other, more
        appropriate judicial districts..............................................................5

        A.  Plaintiffs' claims should be severed ...................................5

        B.  Plaintiffs' claims should be transferred to the Districts where the
            Applications are being processed because venue is not appropriate here ..........8

            1.  Plaintiffs' claims could have been brought where Plaintiffs reside or
                where USCIS is processing the application...................................8

            2.  Plaintiffs' claims should have been brought in the districts
                where the Applications are being processed...................................9

    II.    Plaintiffs lack standing.........................................................11

    III.   Alternatively, Plaintiffs' Motion should be denied and the Amended Complaint
        dismissed as to any remaining claims in this District because the Court lacks
        subject matter jurisdiction..........................................................13

        **A.**  The INA provides that the decision to adjust status is completely
            discretionary and removes federal court jurisdiction to review such
            decision .......................................................................14

        **B.**  The Mandamus Statute, DJA and APA Do Not confer Jurisdiction..................17

            **1.**  The Mandamus Act does not confer jurisdiction.........................18

            **2.**  Neither the DJA nor the APA confer jurisdiction........................20

    IV.   The Amended Complaint Fails to Allege Sufficient Facts to State a Claim ..........23

        A.  The Amended Complaint fails to allege sufficient facts to state a claim
            that the time elapsed for each Plaintiff's Application is unreasonable.............23

        B.  Plaintiffs have no right and USCIS has no duty to "hold" extra EB
            visa numbers beyond this FY, or reserve a visa number at the time
            the application is filed..........................................................28

V.      Plaintiffs cannot show irreparable harm, the public interest weighs heavily
        against the relief Plaintiffs seek, and the requested relief would result in
        severe hardship.................................................................................................. 32

CONCLUSION ......................................................................................................................... 33

**Table of Authorities**

**Federal Cases**

*Aftab v. Gonzalez,*
  597 F. Supp. 2d 76 (D.D.C. 2009) ................................................................................ 6

*Almaqrami v. Pompeo,*
  933 F.3d 774 (D.C. Cir. 2019) ............................................................................ 29, 30

*Asare v. Ferro,*
  999 F. Supp. 657 (D. Md. 1998) ............................................................................... 18

*Awah v. Holder, RWT 09-732,*
  2010 WL 2572848 (D. Md. June 23, 2010) ............................................................. 14

*Ben'Israel v. Glob. Mgmt. Sols., Inc., WDQ-11-0257,*
  2014 WL 6490206 (D. Md. Nov. 18, 2014) ............................................................ 5, 7

*Bourdon v. USDHS,*
  235 F. Supp. 3d 298 ................................................................................................ 11

*Brock v. Pierce Cty.,*
  476 U.S. 253 (1986) ............................................................................................... 24

*Cai v. Gonzales, AW-07-1702,*
  2008 WL 11366471 (D. Md. July 14, 2008) ........................................ 16, 17, 19, 22, 23, 24

*Chaudry v. Chertoff, WDQ-08-0595,*
  2008 WL 11363369 (D. Md. Aug. 29, 2008) ........................................ 16, 17, 19, 22, 23

*City Nat'l Bank v. Edmisten,*
  681 F.2d 942 (4th Cir. 1982) .................................................................................. 20

*Collins Music Co. v. United States,*
  21 F.3d 1330 (4th Cir. 1994) .................................................................................. 23

*Cooper v. Fitzgerald,*
  266 F.R.D. 86 (E.D. Pa. 2010) .................................................................................. 8

*Cross v. Fleet Reserve Ass'n Pension Plan,*
  383 F. Supp. 2d 852 (D. Md. 2005) ......................................................................... 10

*Davidson v. District of Columbia,*
  736 F. Supp. 2d 115 (D.D.C. 2010) .......................................................................... 6

*Davis v. Fed. Election Comm'n,*
  554 U.S. 724 (2008) ................................................................................................. 6

*Desai v. U.S. Citizenship & Immigr. Servs.*,
   2021 WL 1110737 (D.D.C. Mar. 22, 2021) ...................................................... 19

*Direx Israel, Ltd. v. Breakthrough Medical Corp.*,
   952 F.2d 802 (4th Cir. 1991) ......................................................................... 13

*Disparte v. Corp. Exec. Bd.*,
   223 F.R.D. 7–11 (D.D.C. 2004) ....................................................................... 6

*Estate of Michael ex rel. Michael v. Lullo*,
   173 F.3d 503 (4th Cir. 1999) ........................................................................ 18

*Fayyazi v. Napolitano, WDQ-11-3066*,
   2012 WL 5267090 (D. Md. Oct. 22, 2012) ............................................. 16, 23, 24

*Fiallo v. Bell*,
   430 U.S. 787 (1977) ....................................................................................... 28

*Fraga v. Smith*,
   607 F. Supp. 517 (D. Or. 1985) ................................................................ 24, 25

*Goldstein v. Moatz*,
   364 F.3d 205 (4th Cir. 2004) ......................................................................... 20

*Gonzalez v. Cuccinelli*,
   985 F.3d 357, 360 (4th Cir. 2021) ......................................................... 21, 22, 24

*Goumilevski v. Chertoff*,
   2007 WL 5986612 (D. Md. July 27, 2007) ............................. 15, 16, 19, 23, 24

*Gyau v. Sessions*,
   2018 WL 4964502 (D.D.C. Oct. 15, 2018) ................................................. 9, 10

*Harvey v. Cable News Network, Inc., No. RDB-20-3068*,
   2021 WL 615138 (D. Md. Feb. 17, 2021) ......................................................... 9

*Heckler v. Chaney*,
   470 U.S. 821 (1985) ....................................................................................... 22

*Hoo Loo v. Ridge*,
   2007 WL 813000 (E.D.N.Y. Mar. 14, 2007) .................................................. 24

*Hosseini v. Napolitano*,
   12 F. Supp. 3d 1027 (E.D. Ky. 2014) .............................................................. 25

*In re Barr Labs., Inc.*,
   930 F.2d 72 (D.C. Cir. 1997) ................................................................... 26, 28

*In re Beard*,
    811 F.2d 818 (4th Cir. 1987) ........................................................................................... 18

*In re Core Commc'ns, Inc.*,
    531 F.3d 849 (D.C. Cir. 2008) .................................................................................... 23, 24

*INS v. Miranda*,
    459 U.S. 14 (1982) ........................................................................................................... 27

*Islam v. Heinauer*,
    32 F. Supp. 3d 1063 (N.D. Cal. 2014) ............................................................................. 25

*Kerr v. United States*,
    426 U.S. 394 (1976) ......................................................................................................... 18

*Khanna v. Mayorkas*,
    2021 WL 2621566 (D.N.J. June 25, 2021) ............................................................... 17, 26

*Kimber v. Plus3 IT Systems, LLC*,
    2019 WL 1518970 (D. Md. Apr. 5, 2019) ......................................................................10

*Konoplev v. Chertoff, JFM-06-3415*,
    2007 WL 2343658 (D. Md. Aug. 10, 2007) ............................................................... 16, 23

*Lebbin v. Transamerica Life Ins. Co., No. TDC-17-1870*,
    2018 WL 2013054 (D. Md. Apr. 30, 2018) ....................................................................... 9

*Lee v. U.S. Citizenship & Immigration Servs.*,
    592 F.3d 612 (4th Cir. 2010) ........................................................................................... 14

*Liberty Fund, Inc. v. Chao*,
    3904 F. Supp. 2d 105 (D.D.C. 2005) ......................................................................... 26, 27

*Li v. Chertoff*,
    2007 WL 4326784 (E.D.N.Y. Dec. 7, 2007) .................................................................... 25

*Lujan v. Defenders of Wildlife*,
    504 U.S. 555 (1992) ......................................................................................................... 11

*Lynch v. Vanderhoef Builders*,
    237 F. Supp. 2d 615 (D. Md. 2002) ................................................................................... 9

*Mashpee Wampanoag Tribal Council, Inc. v. Norton*,
    336 F.3d 1094 (D.C. Cir. 2003) .................................................................................... 6, 26

*Mass. v. EPA*,
    549 U.S. 497 (2007) ......................................................................................................... 28

*McAfee, LLC v. USCIS*,
  2019 WL 6051559 (D.D.C. Nov. 15, 2019) ............................................................ 8, 9

*Nat'l Ass'n of Mfrs. v. SEC*,
  800 F.3d 518 (D.C. Cir. 2015) ................................................................................. 19

*Nat'l Fed. Of Federal Emps. v. United States*,
  905 F.2d 400 (D.C. Cir. 1990) ................................................................................. 28

*New Motor Vehicle Bd. of California v. Orrin W. Fox Co.*,
  434 U.S. 1345 (1977) ............................................................................................... 33

*Norton v. So. Utah Wilderness Alliance*,
  542 U.S. 55 (2004) ....................................................................................... 21, 22, 28

*Oeste v. Zynga, Inc., Civil No. GLR-20-1566*,
  2021 WL 1785139 (D. Md. May 5, 2021) .................................................................. 8

*Palakuru v. Renaud*,
  2021 WL 674162 (D.D.C. Feb. 22, 2021) ............................................................ 19, 26

*Patil v. Mueller*,
  2007 WL 1302752 (E.D. Va. Apr. 30, 2007) ........................................................... 17

*Paunescu v. I.N.S.*,
  76 F. Supp. 2d 896 (N.D. Ill. 1999) .................................................................... 29, 30

*Pinson v. U.S. Dep't of Justice*,
  74 F. Supp. 3d 283 (D.D.C. 2014) ........................................................................ 5, 6

*Pittson Coal Group v. Sebben*,
  488 U.S. 105 (1988) ................................................................................................. 18

*Przhebelskaya v. U.S. Bureau of Citizenship & Immigr. Servs.*,
  338 F. Supp. 2d 399 (E.D.N.Y. 2004) ................................................................... 29-30

*Safadi v. Howard*,
  466 F. Supp. 2d 696 ................................................................................................. 15

*Sanderlin v Hutchens, Senter & Britton, P.A.*,
  783 F. Supp. 2d 798 (W.D.N.C. 2011) .................................................................... 14

*Shaughnessy v. Mezei*,
  345 U.S. 206 (1953) ................................................................................................. 28

*Skelly Oil Co. v. Philips Petroleum Co.*,
  339 U.S. 667–72 (1950) ........................................................................................... 20

*Spokeo, Inc. v. Robins*,
  136 S. Ct. 1540 (2016) ................................................................................................ 11

*Tate v. Pompeo*,
  513 F. Supp. 3d 132 (D.D.C. 2021) ............................................................................ 12

*Third Degree Films, Inc. v. Does 1-108*,
  2012 WL 1514807 (D. Md. Apr. 27, 2012) .................................................................. 7

*Trs. of the Plumbers and Pipefitters Nat'l Pension Fund v. Plumbing Servs., Inc.*,
  791 F.3d 436 (4th Cir. 2015) ........................................................................................ 9

*United States v. Fausto*,
  484 U.S. 439, 448–449 (1988) .................................................................................... 14

*United States v. James Daniel Good Real Prop.*,
  510 U.S. 43 (1993) ...................................................................................................... 24

*Western Watersheds Project v. Pool*,
  942 F. Supp. 2d 93 (D.D.C. 2013) ............................................................................... 9

*Wilson v. Suntrust Bank, Inc.*,
  2010 WL 4718612 (W.D.N.C. Nov. 15, 2010) ........................................................... 14

*Winter v. Natural Res. Def. Council*,
  555 U.S. 7 (2008) ........................................................................................................ 13

*Wolfram Alpha, LLC v. Cuccinelli*,
  490 F. Supp. 3d 324 (D.D.C. 2020) ............................................................................ 10

*Zhang v. Chertoff*,
  491 F. Supp. 2d 590 (W. D. Va. 2007) ....................................................................... 15

*Zheng v. Reno*,
  166 F. Supp. 2d 875 (S.D.N.Y. 2001) ................................................................... 22, 25

*Zixiang Li v. Kerry*,
  710 F.3d 995 (9th Cir. 2013) ...................................................................................... 30

**Federal Statutes**

5 U.S.C. § 555 .................................................................................................................... 23
5 U.S.C. § 701 ............................................................................................................ 21, 22, 23
5 U.S.C. § 706 ............................................................................................................ 21, 23, 28
8 U.S.C. § 212 .................................................................................................................... 32
8 U.S.C. § 1151 ................................................................................... 3, 4, 12, 24, 29, 30, 31

8 U.S.C. § 1152 ............................................................................................................. 3, 31

8 U.S.C. § 1153 ................................................................................... 3, 13, 25, 29, 30, 31

8 U.S.C. § 1154 ..................................................................................................................... 20

8 U.S.C. § 1184 ........................................................................................................ 21, 29, 30

8 U.S.C. § 1252 ......................................................................... 1, 14, 15, 16, 17, 18, 19, 21

8 U.S.C. § 1255 ............................................................................................... 2, 12, 14, 15

8 U.S.C. § 1447 ............................................................................................................ 15, 23

8 U.S.C. § 1571 ............................................................................................................ 19, 20

8 U.S.C. §§ 1101 ...................................................................................................................... 2

28 U.S.C. §1331 ..................................................................................................... 18, 20, 21

28 U.S.C. § 1361 ..................................................................................................... 15, 18, 19

28 U.S.C. § 1391 ....................................................................................................................... 8, 9

28 U.S.C. § 1404 ...................................................................................................................... 8

28 U.S.C. § 2201 .................................................................................................................... 20

**Rules**

Federal Rule of Civil Procedure 20 ............................................................... 5, 6, 7, 8

Federal Rule of Civil Procedure 21 ............................................................................... 5

**Other**

8 C.F.R. § 245 ............................................................................................ 2, 14, 32, 33

By their Motion, ECF 19, (Motion), 196 Plaintiffs request the extraordinary grant of a preliminary injunction requiring Defendants to expedite adjudication of their employment-based (EB) Forms I-485, Applications to Register Permanent Residence or Adjust Status, (Applications) by September 30, 2021.  Plaintiffs reside in 27 states and the District of Columbia (only three reside in Maryland), and at the time of suit had Applications pending at service centers, the National Benefits Center, and field offices operated by U.S. Citizenship and Immigration Services (USCIS) in 14 states (but not in Maryland).  Plaintiffs fail to plead facts sufficient to show that they are related *in any way* to each other. And their claims do not have anything in common besides the fact that they have pending Form I-485 Applications. USCIS moves to sever these claims, each of which presents its own unique circumstances, and transfer them to the more appropriate judicial districts wherein the service centers, the National Benefits Center, and field offices adjudicating the applications are located.

Alternatively, should the Court allow any claims to remain here, it should deny the Motion and dismiss the Amended Complaint in its entirety. First, the Court should dismiss as moot the (12 to date) Plaintiffs whose Applications have already been decided by USCIS in the normal course of its processing. Second, the remaining Plaintiffs fail to show standing to bring this action. Third, this District Court has repeatedly ruled that the jurisdiction-stripping provision of 8 U.S.C. § 1252(a)(2)(B)(ii) contained in the Immigration and Nationality Act (INA) expressly divests this Court of jurisdiction to order the review of these applications within any specific time period. Fourth, even without this provision, the Court would still lack jurisdiction over the mandamus complaint because there is no clear right to an immediate adjudication of the Applications, and Defendants have no clear duty to provide such relief. Fifth, the Administrative Procedure Act (APA) likewise precludes review because adjudication of the Applications within a specific time

is committed to agency discretion.

Finally, even if the Court finds it has jurisdiction to consider the merits of any claims remaining in this District, Plaintiffs fail to allege sufficient facts to state a claim that the pending time of five to nine months for adjudicating the Applications constitutes unreasonable delay.[1] Additionally, the claims for alternative relief — holding all unused EB visa numbers from this fiscal year (FY) to the next, or reserving a visa number at the time an Application is filed – fail because Plaintiffs do not show that they are entitled to this relief, or that these are discrete agency actions that USCIS is legally required to take. Rather, the INA requires USCIS to roll-over any unused EB visa numbers to the next year's family-sponsored (FS) visa numbers. Plaintiffs cannot by court decree, rather than in the halls of Congress, seek restructuring of the visa allocation program enacted by Congress. USCIS has taken proactive steps in coordination with the Department of State (DOS) to maximize visa use and as a result of these efforts, despite challenges faced by the agency such as the COVID pandemic, USCIS is on track to approve more Applications than it has since FY 2005.

## STATUTORY BACKGROUND

The INA, 8 U.S.C. §§ 1101, *et seq.*, regulates the admission of noncitizens into the United States, including applications for permanent residency and adjustment of status. Title 8 U.S.C. § 1255 authorizes the Attorney General to adjust certain noncitizens who have been admitted into the United States to lawful permanent resident status. Such adjustment of status is expressly in the Attorney General's discretion. Significantly, § 1255(a) does not set forth any timeframe in which a determination on an adjustment application must be made. The procedures for admitted noncitizens to apply for adjustment of status are set forth at 8 C.F.R. § 245, and these regulations,

---

[1] https://egov.uscis.gov/processing-times

too, do not establish any timeframe in which adjudication of an application for adjustment of status must occur.

Congress made sweeping changes to the original INA in the Immigration Act of 1990, including increasing the worldwide quota limits on immigration from 290,000 to 675,000 per year and establishing separate preference categories for both FS and EB immigration, such as moving several special immigrant categories into EB preferences. *See* Pub. L. 101-649 (November 29, 1990). The Immigration Act of 1990 created the numerical limitations on immigrant visa issuance that is in place today. For example, 8 U.S.C. § 1151 sets out the annual limits on visa issuance in three broad categories: FS, EB and diversity (making immigrant visas available to randomly selected foreign nationals coming from countries with historically low rates of immigration). Title 8 U.S.C. § 1152 limits the total number of immigrant visas made available to the natives of any single foreign state in the FS and EB categories to no more than seven percent of the total number of such visas made available in a fiscal year (with certain exceptions and special rules). Within the broad FS and EB categories, the INA breaks down the annual limits further by defining percentages of the total limit that are to be made available – commonly known as preference categories. *See* 8 U.S.C. § 1153. For example, the first EB preference category is composed of "priority workers," who may be issued visas in a number not to exceed 28.6 percent of the worldwide EB level plus any visas not required during that fiscal year by the fourth and fifth EB preference categories.

Under 8 U.S.C. § 1153, immigrant visas in the FS and many EB preference categories are made available based on the order in which a petition or labor certification application, as applicable, is filed on their behalf. 8 U.S.C. § 1153(e). DOS is charged with establishing waiting lists for immigrant visa numbers and "may make reasonable estimates of the anticipated numbers of visas to be used" and "rely upon such estimates in authorizing the issuance of visas." 8 U.S.C.

§§ 1153(e)(3) & (f). DOS may not issue immigrant visas exceeding 27 percent of the worldwide level in any of the first three quarters of any fiscal year. *See* 8 U.S.C. § 1151(a).

In practice, the annual limits for the issuance of immigrant visas within the INA are 226,000 in the FS preference categories and 140,000 in the EB preference categories. 8 U.S.C. §§ 1151(c) and (d). While the annual limit for FS preference immigrants is 480,000, this ceiling is reduced by statute due to other factors to a maximum of 226,000. At the end of the fiscal year, the unused EB visa numbers are required by statute to roll over and are included in the calculation of the subsequent fiscal year's FS limit. Under 8 U.S.C. § 1151(c)(1)(A) and 8 U.S.C. § 1153(c)(3)(C) any unused EB visa numbers roll over into the next fiscal year's family-sponsored limit using a formula in 8 U.S.C. § 1151(c)(1)(A). While most fiscal years see a relatively small increase in the EB annual limits due to unused family-sponsored numbers, FY 2021 saw a more significant increase of 122,288, for an annual limit of 262,288. *See* https://travel.state.gov/content/travel/en/legal/visa-law0/visa-bulletin/2021/visa-bulletin-for-september-2021.html (The fiscal year 2021 limit for employment-based preference immigrants calculated under INA 201 is 262,288).

Since the enactment of § 1151(c)(1)(A), Congress has passed two pieces of legislation to help recapture unused EB visa numbers from specific years: section 106 of the American Competitiveness in the Twenty-first Century Act of 2000 (Pub. Law 106-313), which "recaptured" unused EB visas from FYs 1999 and 2000 that were effectively lost at the start of the subsequent FYs through the § 1151(c)(1)(A) calculation. Similarly, section 502 of the REAL ID Act of 2005 (Pub. Law 109-13) recaptured unused EB visas from FYs 2001, 2002, 2003, and 2004 that were effectively lost through the § 1151 (c)(1)(A) calculation. At no point did Congress say when it

passed these laws that USCIS was not correctly following the existing law with respect to rolling over any unused EB visa numbers.

## ARGUMENT

**I.**     **Plaintiffs' claims should be severed and transferred to other, more appropriate judicial districts.**

Federal Rule of Civil Procedure 21 provides the Court with broad discretion to "sever any claim against a party." In determining whether to sever claims, courts employ the permissive joinder requirements articulated in Rule 20(a), which requires Plaintiffs to satisfy two conditions: assert a right to relief "arising out of the same transaction, occurrence, or series of transactions or occurrences" and a "question of law or fact common to all plaintiffs [must] arise in the action." *Ben'Israel v. Glob. Mgmt. Sols., Inc*., WDQ-11-0257, 2014 WL 6490206, at *3 (D. Md. Nov. 18, 2014) (quoting Rule 20(a)). Courts enjoy wide discretion over joinder of parties to promote trial convenience and expedite the final determination of disputes. *Id*. (citing *Aleman v. Chugach Support Servs., Inc*., 485 F.3d 206, 218 n. 5 (4th Cir. 2007). Because courts must "guard against the danger that a plaintiff might . . . nam[e] high government officials as defendants . . . [to] bring a suit here that properly should be pursued elsewhere," *Cameron v. Thornburgh*, 983 F.2d 253, 256 (D.C. Cir. 1993), the Court should exercise its discretion to sever the instant claims and transfer them to more appropriate districts where the Applications are being adjudicated.

### A.     *Plaintiffs' claims should be severed.*

As a first step to effectuating transfer, the Court should sever Plaintiffs' individual claims, each of which turns on its own unique facts and circumstances. *See Pinson v. U.S. Dep't of Justice*, 74 F. Supp. 3d 283, 288 (D.D.C. 2014). The district court may sever claims either under the Rule 20(a) permissive joinder requirements, or at its discretion. *See id.* Severance is warranted here under both avenues.

To satisfy the "same transaction or occurrence" prong of Rule 20(a), the claims must be logically related to each other. *See Davidson v. District of Columbia*, 736 F. Supp. 2d 115, 119 (D.D.C. 2010). A party cannot join another party who engaged in similar behavior but who are otherwise unrelated; some concerted action is required. *Pinson*, 74 F. Supp. 3d at 289. The other prong of Rule 20(a) requires some common question of law or fact as to all of Plaintiffs' claims. *Disparte v. Corp. Exec. Bd.*, 223 F.R.D. 7, 10–11 (D.D.C. 2004) (citation omitted).

Plaintiffs' sparse allegations here do not show concerted action, or the same transaction or occurrence. While they allege that USCIS unreasonably delayed adjudication of their Applications, the similarities end there. "Resolution of a claim of unreasonable delay is ordinarily a complicated and nuanced task requiring consideration of the particular facts and circumstances before the court." *Mashpee Wampanoag Tribal Council, Inc. v. Norton*, 336 F.3d 1094, 1100 (D.C. Cir. 2003). Plaintiffs are 196 individuals who reside throughout the country (only three reside in Maryland), and their Applications are/were[2] pending at service centers operated by USCIS in either Nebraska or Texas, the National Benefits Center or a field office in 19 different cities (none of those in Maryland). Despite the geographically dispersed nature of the claims, Plaintiffs attempt to use the recent move by USCIS headquarters to this District to pool their claims and pour them into this Court. *See* ECF 11, ¶¶ 5, 20-21. Plaintiffs filed a single complaint – under a single filing fee — to expedite action on their Applications. Plaintiffs are so numerous that the Amended Complaint alleges no information at all as to 186 Plaintiffs, other than to generally claim that their

---

[2]     USCIS has already adjudicated the applications of 12 Plaintiffs, Atreyi Chakrabarti, Srividya Kasturi, Aditya Varma, Syam Kavala, Xiao Yu, Kiran Sasidharan Pillai, Santosh Kumar Kancha, Jatin Bhasin, Sameer Raheja, Sivakumar Bakthavachalam, Raju Praneeth Erra, and Arun Madhavarao (and running), in the normal course of its standard processing, rendering those claims moot and depriving the Court of jurisdiction to consider them. *See Davis v. Fed. Election Comm'n*, 554 U.S. 724, 732 (2008); *see also* Ex. 1 & 2, charts attached to Lekhram & Blackwood Decls. The Court need not reach this issue before deciding whether to transfer claims to more appropriate judicial districts. *See Aftab v. Gonzalez*, 597 F. Supp. 2d 76, 79 (D.D.C. 2009).

Applications have been pending sometime "during or before December of 2020." *See* ECF 11, ¶ 8 & *generally*; *see also Ben'Israel*, 2014 WL 6490206, at *3 (plaintiff's motion to join another plaintiff denied where conclusory statements were insufficient to determine whether the prospective 'plaintiff's employment termination arose out of the same transaction or occurrence). In the declarations attached to the Motion, Plaintiffs allege substantially different facts about their unique circumstances and injuries. *See* ECF 19-2. Each Plaintiffs' alleged right to adjustment of status is predicated upon a separate Application, which relates to only one applicant, whose Application was accompanied by a separate agency filing fee and a discrete assemblage of supporting evidence, or lack thereof, and are at different stages in the USCIS adjudication process which tailors its decisions to the particular facts of the Application. *See Third Degree Films, Inc. v. Does 1-108*, 2012 WL 1514807, *3 (D. Md. Apr. 27, 2012) (each claim against 108 defendants in copyright infringement action involved different facts and defenses, requiring severance of defendants.). Moreover, Plaintiffs allege eligibility to apply for residency for widely divergent reasons: noncitizens with extraordinary ability; outstanding professors and researchers; multinational executives and managers; etc. ECF 11, ¶ 8.  Plaintiffs' applications are or were handled at two USCIS service centers, the National Benefits Center, and 19 field offices around the country, each of which presents its own unique circumstances regarding resources and average wait times. *See* Exhibits 1 & 2, Lekhram Decl., ¶¶ 3, 4, and Blackwood Decl., ¶ 2, & attachments thereto. Indeed, Plaintiffs contend that "most" of their Applications are being processed at USCIS's Texas and Nebraska Service Centers which have "wildly divergent processing times." ECF 11, ¶¶ 46-47. For these reasons, Plaintiffs' claims are not logically related, present different factual circumstances, and should be severed under the criteria of Rule 20(a).

But even if the Court determines that the claims here are not eligible for severance under

Rule 20(a), it should nevertheless exercise its discretion and sever them to effectuate transfers to more appropriate judicial districts. Each Plaintiffs' Application is unique, requiring the Court to consider each Plaintiffs' supporting evidence separately, so that adjudicating Plaintiffs' claims together will not facilitate judicial economy. *See Cooper v. Fitzgerald,* 266 F.R.D. 86, 91 (E.D. Pa. 2010). Combined with the widely divergent basis for each Plaintiffs' eligibility to adjust status, these and the following reasons warrant an exercise of the Court's discretion to sever.

      **B.**    *Plaintiffs' claims should be transferred to the Districts where the Applications are being processed because venue is not appropriate here.*

A case may be transferred to any district where venue is proper "[f]or the convenience of the parties and witnesses, in the interest of justice." 28 U.S.C. § 1404(a). To prevail under § 1404, the moving party is required to show by a preponderance of evidence that the proposed transfer will more conveniently serve the interests of the parties and witnesses and better promote the interests of justice. *Oeste v. Zynga, Inc*., Civil No. GLR-20-1566, 2021 WL 1785139, at *2 (D. Md. May 5, 2021) (citations omitted.). "A § 1404 motion to transfer poses two questions: Could the plaintiff have sued in the transferee court? And if so, should it have?" *McAfee, LLC v. USCIS*, 2019 WL 6051559, at *1 (D.D.C. Nov. 15, 2019). Here, the answer is yes to both questions.

      **1.**    <u>**Plaintiffs' claims could have been brought where Plaintiffs reside or where USCIS is processing the Application.**</u>

The first question turns on whether venue is proper in the transferee district under the federal venue statute. *See id.*; *Oeste*, 2021 WL 1785139, at *4. That statute allows a suit against a federal officer or employee to be brought "in any district where a defendant resides, where the underlying claim arose, or—if no real property is involved—where the plaintiff resides." 28 U.S.C. § 1391(e)(1). Because this case involves no real property, each claim could have been brought in the district each Plaintiff resides — outside the District of Maryland, except as to the three

Plaintiffs who reside in Maryland. *See id.* § 1391(e)(1)(C); *see* ECF 11, case caption.

Also, in APA cases such as this, the underlying claim typically arises "where the decisionmaking process occurred." *Gyau v. Sessions*, 2018 WL 4964502, at *1 (D.D.C. Oct. 15, 2018); *see also Western Watersheds Project v. Pool*, 942 F. Supp. 2d 93, 99 (D.D.C. 2013) (courts generally focus in APA cases on where the decisionmaking process occurred to determine where the claims arose.). Here, the Applications are being/were adjudicated in other judicial districts: the Nebraska Service Center in Lincoln, Nebraska (D. Neb.); the Texas Service Center in Dallas, Texas (N.D. Tex.); the National Benefits Center in Overland Park, Kansas (D. Kan.); and 19 field offices. *See* Ex. 1, Lekhram Decl., ¶ 2, & Ex. 2, Blackwood Decl., ¶ 2. Thus, each of Plaintiffs could have brought their claims in these judicial districts. *See McAfee*, 2019 WL 6051559, at *1.

## 2. Plaintiffs' claims should have been brought in the districts where the Applications are being processed.

As to the second transfer question, whether the case *should* have been brought elsewhere, courts consider (1) the weight accorded to plaintiff's choice of venue; (2) witness convenience and access; (3) convenience of the parties; and (4) the interests of justice. *Trs. of the Plumbers and Pipefitters Nat'l Pension Fund v. Plumbing Servs., Inc.*, 791 F.3d 436, 444 (4th Cir. 2015). These factors favor transferring this case. First, the deference accorded to a plaintiff's choice of forum is proportional to the relationship between the forum and the cause of action. *See Lebbin v. Transamerica Life Ins. Co.*, No. TDC-17-1870, 2018 WL 2013054 (D. Md. Apr. 30, 2018), at *2 (citations omitted)). The weight of a plaintiff's choice of forum is significantly less when, as here (except for perhaps three Plaintiffs residing in Maryland), none of the conduct occurred in the forum plaintiff selected. *Lynch v. Vanderhoef Builders,* 237 F. Supp. 2d 615, 617 (D. Md. 2002); *Harvey v. Cable News Network, Inc.*, No. RDB-20-3068, 2021 WL 615138, at *5 (D. Md. Feb. 17, 2021). Here, all of the Applications are currently pending adjudication at locations outside

Maryland, and 193 of 196 Plaintiffs reside outside Maryland. *See* ECF 11, *generally*; Exhibits 1 & 2, charts. Plaintiffs do not allege that any employee at USCIS headquarters in Maryland has any personal involvement with any Application. *See* ECF 11. Thus, Plaintiffs' choice of forum should be afforded little or no weight.

The second and third factors, witness convenience and access, as well as the convenience of the parties, support granting transfer as there are very few ties in the vast majority of these cases to Maryland. The individual officers responsible for adjudicating each Application are outside Maryland. *See* ECF 11, ¶ 46; Ex. 1 & 2. Additionally, the adjudicating offices are at the site of the administrative record. *See Wolfram Alpha, LLC v. Cuccinelli*, 490 F. Supp. 3d 324, 333 (D.D.C. 2020) ("In cases reviewing administrative records, the location of witnesses may be less significant, but the location of the administrative record carries some weight."). All except three of the 196 Plaintiffs reside outside Maryland and thus, would enjoy no convenience from litigating their case here. The offices of Plaintiffs' counsel of record are all outside Maryland. *See* ECF 11, p. 45. Defendants are a senior agency head and USCIS, neither of which are alleged to be directly involved in the decisionmaking process. *See* ECF 11, case caption, p. 19, & ¶¶ 20 & 21. Thus, the convenience of the parties does not favor venue in Maryland.

Finally, a transfer is in the interest of justice. Broadly, this consideration encompasses "all those factors bearing on transfer that are unrelated to the convenience of witnesses and parties." *Cross v. Fleet Reserve Ass'n Pension Plan*, 383 F. Supp. 2d 852, 857 (D. Md. 2005). This factor is "amorphous and somewhat subjective," and allows a court to "consider many things." *Kimber v. Plus3 IT Systems, LLC*, 2019 WL 1518970, at *6 (D. Md. Apr. 5, 2019). This consideration strongly favors transfer because "courts have a local interest in having localized controversies decided at home," including even "controversies requiring judicial review of an administrative

decision." *Gyau*, 2018 WL 4964502, at *2 (internal quotations omitted). Each Plaintiffs' particularized injury is felt by him or her outside Maryland (except for the three Maryland Plaintiffs) as a result of decisionmaking actions or alleged inactions that have occurred outside of Maryland. *Bourdon*, 235 F. Supp. 3d at 305 ("Cases challenging the actions of local USCIS offices are frequently, and appropriately, transferred to the venue encompassing those local offices[.]") (citations omitted). For these reasons, the Court should sever Plaintiffs' claims and transfer each to the judicial district where the USCIS service center or field office is adjudicating the application.

## II.   Plaintiffs lack standing.

To satisfy the standing requirement, a plaintiff must show that she/he has suffered an injury that is "concrete and particularized" as well as "actual or imminent," *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992), and that any injury in fact is fairly traceable to the challenged conduct of Defendants. *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1547 (2016).  A plaintiff seeking extraordinary relief, as in here, "cannot rest on mere allegations, but must set forth by affidavit or other evidence specific facts that, if taken to be true, demonstrate a substantial likelihood of standing." *Lujan*, 504 U.S. at 561.

Here, Plaintiffs have not met their burden to demonstrate a concrete and particularized injury fairly traceable to USCIS. They were never guaranteed that their Applications would be adjudicated by September 30, 2021, and moreover, that their Applications would be approved. As of August 30, 2021, 148,694 EB visa numbers have been used, including 132,600 used by USCIS and 16,094 used by DOS (through July 31 – DOS updates their totals monthly). Exhibit 3, Parker Decl., ¶ 6. As of the date of this opposition, there are still 27 days to process EB visa applications. USCIS projects that by September 30, 2021 approximately 176,650 EB numbers will be used out of a total of 262,288 allotted by DOS, all of which are being processed in the order that USCIS and DOS established to manage their visa queue. Plaintiffs are 196 applicants vying for the

remaining 115,651 visa numbers which many others seek. There is no guarantee that all EB applicants will receive visas.[3]

Plaintiffs also fail to meet their burden of showing an injury fairly traceable to USCIS, particularly in light of the pandemic, which has caused delays. *See Tate v. Pompeo*, 513 F. Supp. 3d 132, 137 (D.D.C. 2021) ("The COVID-19 pandemic has disrupted the visa application and interview process, creating unprecedented challenges . . . . ."); Ex. 3, Parker Decl., ¶ 11. Plaintiffs' alleged injury is not traceable to USCIS to the extent DOS, who is not a defendant, has used 16,094 (and running) visa numbers, and it is DOS who determines the number of visas allotted. *See Part E,* https://travel.state.gov/content/travel/en/legal/visa-law0/visa-bulletin/2021/visa-bulletin-for-september-2021.html (last accessed Aug. 30, 2021).

Furthermore, USCIS cannot be responsible for any injury where it follows statutory requirements, 8 U.S.C. § 1151(c)(1)(A) and 8 U.S.C. § 1153(c)(3)(C), to roll-over all unused EB visa numbers to FS visas. Since the enactment of § 1151(c)(1)(A), Congress has passed two pieces of legislation to help recapture unused EB visa numbers from specific years: section 106 of the American Competitiveness in the Twenty-first Century Act of 2000 (Pub. Law 106-313), which "recaptured" unused EB visas from FYs 1999 and 2000 that were effectively lost at the start of the subsequent FYs through the § 1151(c)(1)(A) calculation. Similarly, section 502 of the REAL ID Act of 2005 (Pub. Law 109-13) recaptured unused EB visas from FYs 2001, 2002, 2003, and 2004 that were effectively lost through the § 1151 (c)(1)(A) calculation. At no point did Congress say

---

[3]     Additionally, a significant percentage of individuals with pending EB visa applications have not yet provided a valid Form I-693, Report of Medical Examination and Vaccination Record, required to demonstrate eligibility for adjustment of status. 8 U.S.C. 1255(a)(2), 1182(a)(1) https://www.uscis.gov/i-693A practice by some applicants is to avoid providing the Form I-693 at the time of filing and instead only provide it when requested through a Request for Evidence (RFE). Without Form I-693, USCIS cannot approve their applications. Thus, any injuries Plaintiffs suffer is caused by choices made by any Plaintiff who has not provided a valid Form I-693, not Defendants.

when it passed these laws that USCIS was not correctly following the existing law with respect to

unused EB visa numbers. Clearly, if Congress wanted to recapture unused EB visa numbers from

2020 and/or 2021, it could do so. Thus, any injuries Plaintiffs suffer is caused by choices made by

Congress, not Defendants.

Furthermore, standing requires redressability, the idea that the injury alleged can be

redressed by a favorable decision. Stated plainly, a Court ordering USCIS to adjudicate Plaintiffs'

Applications would not redress the alleged injury; it would give them far more favorable treatment

than they are entitled to at the expense of all other EB visas, including those who consistent with

8 U.S.C. § 1153(b) are ahead of them in line. Because Plaintiffs have not established their

evidentiary burden for standing to seek a preliminary injunction, the Court should deny the

preliminary injunction motion at this threshold.

**III.    Alternatively, Plaintiffs' Motion should be denied and the Amended Complaint
dismissed as to any remaining claims in this District because the Court lacks subject
matter jurisdiction.**

As to any live claims remaining in this District asserted by a Plaintiff which the Court

determines has standing, the Motion should be denied and such claims should be dismissed.

Preliminary injunctions are "extraordinary remedies" involving the exercise of "very far-reaching

power" to be granted only "sparingly" and "in limited circumstances," and Plaintiffs cannot clearly

establish a strong likelihood of success on the merits, irreparable injury, or that the balance of

hardships and public interest favors a preliminary injunction. *Direx Israel, Ltd. v. Breakthrough

Medical Corp.*, 952 F.2d 802, 816 (4th Cir. 1991); *see Winter v. Natural Res. Def. Council*, 555

U.S. 7, 20 (2008).

**A.** ***The INA provides that the decision to adjust status is completely discretionary and removes federal court jurisdiction to review such decision.***

Courts often deny motions for preliminary injunctions when subject-matter jurisdiction over the underlying complaints is lacking. *See, e.g.*, *Sanderlin v Hutchens, Senter & Britton, P.A.*, 783 F. Supp. 2d 798, 799 (W.D.N.C. 2011) (motion for temporary restraining order denied because court lacked subject-matter jurisdiction); *Wilson v. Suntrust Bank, Inc.*, 2010 WL 4718612, at *1 (W.D.N.C. Nov. 15, 2010) (same). Here, the Court does not have federal question jurisdiction to review discretionary agency decisions because the APA and the Mandamus Act do not confer jurisdiction in light of the express bar on jurisdiction of 8 U.S.C. § 1252(a)(2)(B)(ii). *Awah v. Holder*, RWT 09-732, 2010 WL 2572848, at *4 (D. Md. June 23, 2010) (citing *Wade v. Blue*, 369 F.3d 407, 411 n. 2 (4th Cir. 2004); *United States v. Fausto*, 484 U.S. 439, 448–449 (1988).

Plaintiffs filed their Applications pursuant to 8 U.S.C. § 1255(a). This section provides that the status of a noncitizen who has been admitted or paroled into the United States "*may* be adjusted by the [Secretary], *in his discretion* and under such regulations as he may prescribe, to that of an alien lawfully admitted for permanent residence . . . ." 8 U.S.C. § 1255(a) (emphasis added). Granting or denying the application is thus discretionary. *See Lee v. U.S. Citizenship & Immigration Servs.*, 592 F.3d 612, 616 (4th Cir. 2010) (in APA action challenging validity of a regulation after USCIS denied plaintiffs' EB Form I-485, the court stated that adjustment of status "is ultimately a discretionary one for the Attorney General, acting through his designee.") (citations omitted). Significantly, neither the face of the statute nor the enabling regulations specify a time frame within which the Secretary must act on the application. 8 U.S.C. § 1255(a); 8 C.F.R. § 245.

The process is quintessentially discretionary, and it is one which is removed from the ambit of judicial review by two subsections of 8 U.S.C. §1252. Section 1252(a)(2)(B)(i) provides that,

notwithstanding any other provision of law, including the mandamus statutes, 28 U.S.C. §§ 1361 and 1651, "no court shall have jurisdiction to review any judgment regarding the granting of relief under section . . . 1255 of this title, . . . ." In addition, § 1252(a)(2)(B)(ii) expressly precludes judicial review of "any other *decision or action* of the . . . Secretary of Homeland Security the authority of which is specified under this subchapter to be *in the discretion* of the . . . Secretary of Homeland Security . . . ." 8 U.S.C. § 1252(a)(2)(B) (emphasis added).

The absence of any temporal restrictions in § 1255(a) confirms Congress's intent to give USCIS complete discretion over the adjudication of adjustment applications, including the timing of adjudications. "If Congress had intended for the pace of adjudication of adjustment applications to be subject to judicial review, it could have expressly offered a standard with which to measure the lapse of time." *Zhang v. Chertoff*, 491 F. Supp. 2d 590, 593 (W. D. Va. 2007). Indeed, other provisions of the INA identify specific temporal limitations to complete certain immigration-related actions. *See, e.g.*, 8 U.S.C. § 1447(b) (providing an express 120-day review period for naturalization applications); *see also Goumilevski v. Chertoff*, 2007 WL 5986612, at *3 (D. Md. July 27, 2007) (contrasting strict temporal limits in other provisions of the INA with the lack of any such limits in § 1255(a)). "The absence of any such reference is consistent with, and confirmatory of, Congress' intent to confer on USCIS discretion over not just the adjustment of status decision, but also the process employed to reach that result, and to exclude from judicial review the exercise of all that discretion." *Safadi*, 466 F. Supp. 2d at 699.

Not surprisingly, it is well-established in this District, including this Court, that these jurisdiction-stripping provisions apply not only to the final decision on an adjustment application, but also to any action or series of acts, including the processing and pace of processing of a Form I-485. *See Shalev v. Gonzales*, PJM-07–256 (D. Md. Sept. 24, 2007), Memorandum Opinion, ECF

12 (holding that § 1252(a)(2)(B)(ii) divests the court of jurisdiction to set a deadline by which USCIS must decide the I-485).[4]

Two cases in this District, *Chaudry* and *Cai*, are directly on point. In both cases, USCIS had not completed adjudication of plaintiffs' EB Forms I–485. *Cai*, 2008 WL 11366471, at *1; *Chaudry*, 2008 WL 11363369, at *1; *compare with* ECF 11, ¶¶ 8 & 9 (DHS approved Form I-140s but not Form I-485s). As in the instant case, plaintiffs filed mandamus actions to compel USCIS to expedite adjudication of their Forms I-485 asserting subject-matter jurisdiction under federal question jurisdiction, the APA, the Mandamus Act and Declaratory Judgment Act (DJA). *Cai*, 2008 WL 11366471, at *2 (alleging 21-month delay); *Chaudry*, 2008 WL 11363369, at *2 (alleging five year delay). Defendants moved to dismiss arguing that 8 U.S.C. § 1252(a)(2)(B)(ii) divested the Court of jurisdiction to review USCIS's treatment of the I–485 application, including pace of processing. The *Chaudry* and *Cai* Courts agreed.

> Courts have held that it is 'pellucidly clear' that this statute precludes judicial review of any discretionary action of the USCIS, including the handling of I–485 applications under § 1255(a).Thus, if the pace at which an [I–485] application is processed is considered to be a discretionary 'action,' then this case clearly falls under 8 U.S.C. § 1252(a)(2)(B)(ii), and this [C]ourt lacks subject matter jurisdiction.

*Chaudry*, 2008 WL 11363369, at *2 (citations and quotations omitted). Because USCIS's review

---

[4]     *See also Fayyazi v. Napolitano*, WDQ-11-3066, 2012 WL 5267090, at *2-3 (D. Md. Oct. 22, 2012) (same); *Chaudry v. Chertoff*, WDQ-08-0595, 2008 WL 11363369, at *2 (D. Md. Aug. 29, 2008) (same); *Cai v. Gonzales*, AW-07-1702, 2008 WL 11366471, at *3 (D. Md. July 14, 2008) (same); *Goumilevski v. Chertoff*, DKC-06–3247, 2007 WL 5986612, at *3-4 (D. Md. July 27, 2007) (same); *Konoplev v. Chertoff*, JFM-06-3415, 2007 WL 2343658, at *1 (D. Md. Aug. 10, 2007) (court has no subject matter jurisdiction to order FBI to complete the background check needed to process petitioner's Form I-485 or set a deadline by which USCIS must decide the I-485); *Wang v. Chertoff*, DKC-07–281 (D. Md. Mar. 28, 2008), Memorandum Opinion, ECF 13 (no jurisdiction to set a deadline by which USCIS must decide the I-485); *Lyatkin v. Chertoff, et al.*, AW-07-573 (D. Md. Aug. 22, 2007), ECF 9, Memorandum Opinion (same); *Singh v. Gonzalez, et al.*, AW-07-895 (D. Md. Aug. 22, 2007) (same); ECF 11, Memorandum Opinion; *Sun, et al., v. Chertoff, et al.*, AW-07-391 (D. Md. Aug. 22, 2007); ECF 9, Memorandum Opinion (same).

of an I-485 application is an "action" within the discretion of the Attorney General, this Court is precluded under § 1252(a)(2)(B)(ii) from setting a deadline by which the Attorney General must make a decision on the Plaintiffs' applications. *Id*. at n.5 ("the absence of any time limit for processing adjustment applications indicates that Congress intended the pace to be within the discretion of the Attorney General"); *see also Cai*, 2008 WL 11366471, at *3-4 (Court lacks subject-matter jurisdiction and mandamus will not issue to compel immediate adjudication, relying on a "number of decisions from this District" which have found USCIS's pace of processing Forms I-485 to be discretionary).

Congress's withdrawal of subject-matter jurisdiction in this regard is "correct from a policy perspective as well." *See Patil v. Mueller*, 2007 WL 1302752, at *2 (E.D. Va. Apr. 30, 2007). To that end, granting relief:

> would set a dangerous precedent, sending a clear signal that more litigious applicants are more likely to be moved to the top of the proverbial pile over other applicants that have waited even longer. Such a situation hardly optimizes resources, and serves only the individual at the detriment to the group.

*See id.*; *see also Khanna v. Mayorkas*, 2021 WL 2621566, at *4, 7 (D.N.J. June 25, 2021).

Here, Plaintiffs seek judicial intervention to expedite action on their Applications before September 30, 2021. *See* ECF 1, p. 37, ¶ 2. This case is therefore directly analogous to the above cases, particularly *Chaudry* and *Cai*, that have held that jurisdiction is lacking. Thus, as to any claims remaining in this District, this Court, too, lacks jurisdiction to set a deadline for USCIS to adjudicate the Applications.

### B.   *The Mandamus Statute, DJA and APA Do Not Confer Jurisdiction.*

Plaintiffs incorrectly ground their allegations of jurisdiction upon the mandamus statute, the DJA and the APA. *See* ECF 11, ¶¶ 1-4.  Because of the discretionary nature of the Form I-485 process, mandamus is not appropriate and does not confer subject matter jurisdiction in this case.

Furthermore, neither the APA nor the DJA, in conjunction with federal question jurisdiction (28 U.S.C. §1331), provides a basis for this Court to exercise jurisdiction.

### 1.     **The Mandamus Act does not confer jurisdiction**.

The Mandamus Act vests district courts with "original jurisdiction of any action in the nature of mandamus to compel an officer or employee of the United States or any agency thereof to perform a duty owed to the plaintiff."  28 U.S.C. § 1361. The Supreme Court has described mandamus relief as an "extraordinary remedy" which "will issue only to compel the performance of a *clear nondiscretionary duty*." *Pittson Coal Group v. Sebben*, 488 U.S. 105, 121 (1988) (emphasis added). The Fourth Circuit has determined that granting mandamus is a drastic remedy to be used only in extraordinary situations.  *Kerr v. United States*, 426 U.S. 394, 402 (1976);  *In re Beard*, 811 F.2d 818, 826-27 (4th Cir. 1987).

A writ of mandamus may issue only when petitioner has demonstrated *all* of five elements: (1) a clear legal right to the relief sought; (2) a clear duty on the part of the responding party to do the specific act requested; (3) the act requested is an official act or duty; (4) no other adequate remedy is available; and (5) the issuance of the writ will effect right and justice in the circumstances. *Estate of Michael ex rel. Michael v. Lullo*, 173 F.3d 503, 512-513 (4th Cir. 1999); *Asare v. Ferro*, 999 F. Supp. 657, 659 (D. Md. 1998).  Additionally, mandamus cannot be used to compel the performance of discretionary duties of federal government officers, but only to compel ministerial acts.  *Asare*, 999 F. Supp. at 659.

Here, the action Plaintiffs seek to compel is not suited for mandamus relief for two reasons. First, as previously explained, 8 U.S.C. § 1252(a)(2)(B)(ii) divests a court of *any* basis for jurisdiction for all causes of action. By its plain terms, § 1252(a)(2)(B)(ii) applies "[n]otwithstanding any other provision of law (statutory or nonstatutory), including . . . [28 U.S.C.

§] 1361." 8 U.S.C. § 1252(a)(2)(B). Thus, if this Court holds that § 1252(a)(2)(B)(ii) applies, then it need not go further because this jurisdiction-stripping provision is sufficient to dismiss Plaintiffs' Amended Complaint. *See e.g., Goumilevski*, 2007 WL 5986612, at *3 ("In addition, 28 U.S.C. §§ 1361, 1331, and the APA . . . do not restore subject matter jurisdiction because 8 U.S.C. § 1252(a)(2)(B)(ii) specifically precludes judicial review notwithstanding § 1361 or any other provision of law."); *Chaudry*, 2008 WL 11363369, at *3 (same); *Cai*, 2008 WL 11366471, *4 n.4 (same); *see* Ex. 1, ¶¶ 3 & 4.

Finally, Congress has not set a mandatory timetable to adjudicate the Applications at issue here. Plaintiffs allege that the INA specifies that "immigration benefit applications *should* be adjudicated within 180 days," quoting 8 U.S.C. § 1571(b): "It is the *sense of Congress* that the processing of an immigration benefit applications *should* be completed not later than 180 days after the initial filing of the application." ECF 11, ¶ 54 (emphasis added); ECF 19.1, p. 16. This "sense of Congress" language refers to all types of immigration benefits (not just I-485 applications), and is legislative dicta that does not mandate a 180-day deadline here. Courts in at least four other circuits have recognized that a "sense of Congress" resolution or similar language is not law. *Palakuru v. Renaud*, 2021 WL 674162, at *4 (D.D.C. Feb. 22, 2021) ("It makes practical sense that § 1571(b)'s language be interpreted as precatory rather than binding, as 'Congress has given the agencies wide discretion in the area of immigration processing'"); *Desai v. U.S. Citizenship & Immigr. Servs.*, 2021 WL 1110737, at *6 (D.D.C. Mar. 22, 2021) (§ 1571(b) "sense of Congress" is not law) (citation omitted); *Nat'l Ass'n of Mfrs. v. SEC*, 800 F.3d 518, 529 n.26 (D.C. Cir. 2015) (noting the First, Third and Ninth Circuits have treated similar language as "precatory" and "a statement of opinion," rather than "a statement of fact"). It should also be noted that § 1571(b) was enacted in 2000 when the number of immigration benefit applications received

by USCIS was far less than today.

Moreover, that § 1571(b) does not mandate a 180-day deadline is evident from 8 U.S.C. § 1154(j), which states that if an employer-based Form I-485 filed by a noncitizen "remained unadjudicated for 180 days or more" then the Form I-140, Immigrant Visa Petition for Alien Worker, "shall remain valid with respect to a new job if the individual changes jobs or employers." 8 U.S.C. § 1154(j). Thus, Congress expressly contemplated that EB visa applications may take longer than 180 days to adjudicate, and provided certain relief in such instances. *See also Lee*, 592 F.3d at 618 n.4 ("noting *the substantial time necessary for processing adjustment of status applications*, Congress enacted § 204(j) of the Immigration and Naturalization Act, 8 U.S.C.A. § 1154(j) - the portability statute."). Finally, 180 days (six months) is longer than the approximate five month periods which some of Plaintiffs allege their Application has been pending. *See* charts attached to Ex. 1 & 2. Because there is no statutory timeframe for adjudicating an EB visa application, this Court lacks subject-matter jurisdiction to review the unreasonable delay claim under the Mandamus Act.

> **2.      Neither the DJA nor the APA confer jurisdiction.**

Plaintiffs allege that the Court has jurisdiction over this matter pursuant to the DJA and/or the APA in conjunction with 28 U.S.C. § 1331. *See* ECF 11, ¶ 1-4. The DJA, 28 U.S.C. § 2201, does not provide an independent basis for subject matter jurisdiction. *Skelly Oil Co. v. Philips Petroleum Co.*, 339 U.S. 667, 671–72 (1950); *City Nat'l Bank v. Edmisten*, 681 F.2d 942, 945 n.6 (4th Cir. 1982). Furthermore, the United States may only be sued where it has waived sovereign immunity, which it has not done under the DJA. *See Goldstein v. Moatz*, 364 F.3d 205, 219 (4th Cir. 2004). Accordingly, unless Plaintiffs can demonstrate an independent basis for federal subject matter jurisdiction, the DJA will not provide jurisdiction and this case must be dismissed.

The only other avenue for jurisdiction to be found in the Amended Complaint is via the APA, 5 U.S.C. § 701, in conjunction with 28 U.S.C. § 1331. In *Norton v. So. Utah Wilderness Alliance*, 542 U.S. 55 (2004), the Supreme Court disposed of this jurisdictional allegation. Section 706(1) of the APA states that a reviewing court "shall . . . compel agency action unlawfully withheld or unreasonably delayed." *Id.* at 62. In reviewing this section, the Court noted that "the only agency action that can be compelled under the APA is action legally *required*." *Id.* at 63 (emphasis original). The Court reasoned that the APA simply extended the traditional practice of achieving judicial review through a writ of mandamus and that the mandamus remedy was normally confined to enforcement of "'a specific, unequivocal command,'" *Id.* (citation omitted). The Court added that Section 706(1) also speaks of agency action which is "unreasonably delayed," *id.* at 63, n.1, the essential allegation here. However, "a delay cannot be unreasonable with respect to action that is not required," *Id.* Thus, a claim under Section 706(1) can only go forward "where a plaintiff asserts that an agency failed to take a *discrete* agency action that it is *required to take*." *Id.* at 64 (emphasis original).

The Fourth Circuit recently applied the principles of *Norton* in the immigration context. In *Gonzalez v. Cuccinelli*, the plaintiffs filed suit under the APA, alleging that DHS had unlawfully withheld or unreasonably delayed adjudication of their U-visa petitions and their work authorization applications pending U-visa approval. 985 F.3d 357, 360 (4th Cir. 2021). The Fourth Circuit held that § 1252(a)(2)(B) (ii) stripped the district court of jurisdiction to review the work authorization delay claims because language in the section 1184(p)(6) stated that DHS "may" grant the work authorization application to any noncitizen who has a pending, bona fide application for a U-visa. Therefore, the statute did not require USCIS to adjudicate the application in the first place. *Id.* at 374. In reviewing the U-visa system, the Fourth Circuit declared that "Congress has

shown that it knows how to require an agency to implement a provision and adjudicate claims, *especially within a certain timeframe.*" *Id*. at 367 (emphasis added).

Similar to the facts in *Gonzalez*, neither the statute nor the applicable regulations specify a timeframe with which the adjudication should take place and the court lacks jurisdiction to order otherwise. Adjudicating an EB visa application is a manifestly discretionary task. There is no "discrete agency action which it is required to take," and there is no action which has been "unlawfully withheld;" nor, therefore, can it be said that the agency's action has been "unreasonably delayed," 542 U.S. at 64 & 63 n.1. Thus, it is not surprising that there is a significant body of authority, rejecting efforts, such as those of Plaintiffs here, to invoke the jurisdiction of the district courts over the discretionary nature of the process at issue, and the APA expressly exempts "agency action . . . *committed to agency discretion by law*," 5 U.S.C. § 701(a)(2) (emphasis added). *See*, *e.g.*, *Chaudry*, 2008 WL 11363369, at *2 & n.5; *Cai*, 2008 WL 11366471, at *3-4; *Zheng v. Reno*, 166 F. Supp. 2d 875, 879-880 (S.D.N.Y. 2001) (judicial creation of duty to act on adjustment-of-status application within specified time frame, where none is prescribed by statute, "would have potential for mischievous interference with the functioning of already overburdened administrative agencies." (quotations omitted)).

Section 701(a)(2) of the APA also does not give rise to jurisdiction as there is no statutory or regulatory provision to provide a "meaningful standard" against which to measure USCIS's pace of processing an Application. The Supreme Court has interpreted 5 U.S.C. § 701(a)(2) to mean that "review is not to be had if the statute is drawn so that the court would have no meaningful standard against which to judge the agency's exercise of discretion." *Heckler v. Chaney*, 470 U.S. 821, 830 (1985). As the Court explained, "if no judicially manageable standards are available for judging how and *when* an agency should exercise its discretion, then it is impossible to evaluate

agency action for 'abuse of discretion.'" *Id.* (emphasis added); *see also Collins Music Co. v. United States*, 21 F.3d 1330, 1335 (4th Cir. 1994) ("The use of precatory language makes it impossible to ascertain a standard against which the action or inaction of the IRS can be measured."). In contrast with other immigration laws, *see, e.g.*, 8 U.S.C. § 1447(b), the statute and regulations governing Form I-485 applications provide no timeframe within which an application must be adjudicated. Thus, there is no standard against which this Court can measure whether USCIS has acted "within a reasonable time," 5 U.S.C. § 555(b), or whether it has "unreasonably delayed" adjudication, *id.* § 706(1).

Thus, this Court and others in this District have held that APA review is precluded because the action challenged is "committed to agency discretion by law." *See, e.g.*, *Shalev v. Gonzales*, PJM-07–256 (D. Md. Sep. 24, 2007), Memorandum Opinion, ECF 12 (no jurisdiction under the APA, DJA or Mandamus Act); *Goumilevski*, 2007 WL 5986612, at *5 (same); *Fayyazi*, 2012 WL 5267090, at *3 n.23; *Cai*, 2008 WL 11366471, *4 n.4; *Chaudry*, 2008 WL 11363369, *3; *Konoplev*, 2007 WL 2343658, at *1 (D. Md. Aug. 10, 2007) (same). So too, should this Court rule that 5 U.S.C. § 701(a)(2) precludes judicial review of any of Plaintiffs' claims that remain in this District.

## IV.   The Amended Complaint fails to allege sufficient facts to state a claim.

### A.   *The Amended Complaint fails to allege sufficient facts to state a claim that the time elapsed for each Plaintiffs' Application is unreasonable.*

Even if this Court had jurisdiction to review Plaintiffs' unreasonable delay claims, which it does not, the allegations of the Motion and Amended Complaint do not state a plausible claim for relief. "The central question in evaluating 'a claim of unreasonable delay' is 'whether the agency's delay is so egregious as to warrant mandamus.'" *In re Core Commc'ns, Inc.*, 531 F.3d 849, 855 (D.C. Cir. 2008) (quoting *Telecommunications Rsch. & Action Ctr. v. F.C.C.*, 750 F.2d

70, 79 (D.C. Cir. 1984). As the Fourth Circuit has recognized: "The Supreme Court has not, so far, provided clear guidance on how to determine how long is too long to wait for an agency adjudication." *Gonzalez*, 985 F.3d at 375.

As discussed above, Plaintiffs fail to point to any precise statutory or regulatory provision establishing a specific timetable that clearly reins in USCIS's discretion as to pace of processing. And even if they did, the time limit is not mandatory unless it both (1) "expressly requires an agency or public official to act within a particular time period," and (2) "specifies a consequence for failure to comply with the provision." *Brock v. Pierce Cty.,* 476 U.S. 253, 259 (1986) (internal citation and quotations omitted); *see United States v. James Daniel Good Real Prop.*, 510 U.S. 43, 63 (1993) ("If a statute does not specify a consequence for noncompliance with statutory timing provisions, the federal courts will not in the ordinary course impose their own coercive sanction."). None of those hallmarks are present here. All Plaintiffs point to is the September 30th deadline for the issuance of EB visas, but 8 U.S.C. § 1151(d), does not require USCIS to do *anything* prior to September 30th; rather, the statute *prohibits* the agency from issuing FY 2021 EB visas after that date.

Plaintiffs allege approximate delays of five to nine months. ECF 1, ¶¶ 10-18. Such alleged delays are not so egregious as to warrant mandamus. *See In re Core Commc'ns, Inc*., 531 F.3d at 855. This Court and others within this District have found that varying months and years of processing time is not an unreasonable delay in the processing of adjustment of status applications. *See Cai*, 2008 WL 11366471 at *3-4 & n. 3 (21-month processing time of EB Form I-485 was slow, but not a failure to adjudicate, nor so excessive as to state a cognizable claim).[5] Thus, as to

---

[5]       *See also Goumilevski*, 2007 WL 5986612 at *4 (two year processing time of Form I-485 is within discretion of USCIS); *Fayyazi*, 2012 WL 5267090, *3 n. 23 (the record does not reflect that

any claim remaining in this District, Plaintiff must allege and show beyond the passage of time why his or her claim is unreasonably delayed.

Here, the Motion and Amended Complaint make no credible allegation of bad faith on the part of USCIS. Plaintiffs allege that since the roll-over system was created by Congress in 1990, it has become less effective in utilizing unused EB numbers due to the increasing number of applicants. ECF 11, ¶¶ 32 & 33. Plaintiffs further allege that because of a change in availability of visas due to the roll-over, "thousands of Indian and Chinese nationals" filed Form I-485 applications "between September and December 2020." *Id.*, ¶¶ 38; *see also* ¶ 39 (Complaint conclusory alleges USCIS inadequately prepared for volume of applications). Such allegations do not support a claim that USCIS has unreasonably delayed a particular Application filed by any individual Plaintiff.

Furthermore, as a matter of policy, the claims further ignore the realities of limited governmental resources and the practical consequences that granting relief in this case would have by having a court decree reorder the priorities of adjudications by USCIS which Congress did not intend (*see* 8 U.S.C. § 1153(e), providing that EB preference visas be issued to eligible immigrants in the order in which a petition on behalf of each has been filed), to allow Plaintiffs to jump in

---

nine year processing time was an inordinate delay); *Zheng v. Reno*, 166 F. Supp. 2d 875, 881 (nine month processing time of I-485 in which interview has not been scheduled is not an abuse of discretion); *Hosseini v. Napolitano*, 12 F. Supp. 3d 1027, 1035 (E.D. Ky. 2014) (noting that "courts have found delays of four years or less to be reasonable" to decide I-485); *Islam v. Heinauer*, 32 F. Supp. 3d 1063, 1072 (N.D. Cal. 2014) (same, in the immigration context generally); *Li v. Chertoff*, 2007 WL 4326784, at *6 (E.D.N.Y. Dec. 7, 2007) (collecting cases, and observing that a 16-month delay in adjudicating a motion for reconsideration of a denial of an adjustment of status application "is not remotely in the range that has been held by other courts to be 'unreasonable' for purposes of the APA"); *see also Hoo Loo v. Ridge*, 2007 WL 813000, *4 (E.D.N.Y. Mar. 14, 2007) ("[T]he Supreme Court has held that evidence of the passage of time cannot, standing alone, support a claim of unreasonable delay."); *Fraga v. Smith*, 607 F. Supp. 517, 521 (D. Or. 1985) ("The passage of time alone is rarely enough to justify a court's intervention in the administrative process . . . .").

front of the queue. In such cases, courts in the District of Columbia have refused to grant relief, even though all the other factors considered under unreasonable delay claims favor it, where a judicial order putting the plaintiff "at the head of the queue would simply move all others back one space and produce no net gain." *Palakuru v. Renaud*, 2021 WL 674162, at \*5 (D.D.C. Feb. 22, 2021), appeal dismissed, No. 21-5048, 2021 WL 1440155 (D.C. Cir. Apr. 15, 2021) (quoting *Mashpee Wampanoag Tribal Council, Inc.*, 336 F.3d at 1099. This is so because courts "have no basis for reordering agency priorities." *Id*. (quoting *In re Barr*, 930 F.2d at 76). Rather, agencies are "in a unique—and authoritative—position to view its projects as a whole, estimate the prospects for each, and allocate its resources in the optimal way." *Id*.; *see also Khanna*, 2021 WL 2621566, at \*7 (D.N.J. June 25, 2021) ("where, as here, 'the Court lacks power to review the ultimate agency decision and the agency's cases are backlogged, granting the writ to compel adjudication would do nothing more than shuffle to the front of the line those I–485 applicants canny enough to file a complaint in federal district court.'").

In *Liberty Fund, Inc. v. Chao*, a backlog and resulting delays in processing applications for permanent labor certification were caused by statutory changes which twice allowed noncitizens to adjust their status to that of lawful permanent residency upon the payment of a penalty filing fee and the filing of an application for permanent labor certification within short deadlines. 394 F. Supp. 2d 105, 109 (D.D.C. 2005). The court recognized that two to four years in processing applications for permanent labor certification appeared unduly long and worked a hardship on employers and their prospective employees, but the competing priorities posed by other pending applications and by the H–1B and H–2B temporary certification applications, together with the good faith efforts of the agency to alleviate the delays, outweighed those considerations. *Id.* at 120.

Here, USCIS has made many good faith efforts to maximize adjudications -- prioritizing EB adjustment of status applications during every step of processing and adjudication during FY 2021.  *See* Parker Decl., ¶¶ 11-13.   USCIS implemented a risk-based interview determination in March of 2020 and now most applications are adjudicated without an interview; worked collaboratively with USCIS partners at DOS to ensure that the dates in the Visa Bulletin were set at a level to allow the filing of sufficient new EB applications early in FY 2021; expanded Lockbox intake facility processing capacity and redistributed workloads between Lockbox facilities; prioritized the processing of the EB adjustment of status workload at the USCIS National Benefits Center; reused biometrics previously provided by applicants to the greatest extent possible, freeing up resources at Application Support Centers for other applicants; to name a few.  *See id*. As a result, USCIS is on track to approve more EB adjustment of status applications than it has since FY 2005.  *Id.*, ¶ 13.

Given these extensive efforts, and that the mere passage of time, without more, is inadequate to show unreasonable delay, Plaintiffs cannot show that any alleged delay in his or her case is unreasonable. *See INS v. Miranda*, 459 U.S. 14, 18 (1982). Thus, while USCIS strives to complete adjudications within several months, such a policy creates no enforceable right. Plaintiffs' processing times are well under USCIS's average processing times (*see* ECF 11, ¶¶ 10-19, 46-47, & 53), but even average processing times are simply that: more complicated cases may take longer than the average time to adjudicate.

For all these reasons, Plaintiffs fail to allege sufficient facts to state a plausible claim that their Form I-485 Applications have been unreasonably delayed. Any alleged delay has not been so egregious as to warrant the extraordinary remedy of mandamus.

**B.**      ***Plaintiffs have no right and USCIS has no duty to "hold" extra EB visa numbers beyond this FY, or reserve a visa number at the time the application is filed.***

As noted, "a claim under § 706(1) can proceed only where a plaintiff asserts that an agency failed to take a discrete agency action that it is required to take." *Norton*, 542 U.S. at 64. This condition precludes attacks that seek broad programmatic improvements of agency behavior, as well as judicial review of "even discrete agency action that is not demanded by law." *Id.* at 65. The D.C. Circuit has held that agency determinations dealing with national interest and foreign policy issues are not proper subjects of judicial intervention. *See, e.g., Nat'l Fed. Of Federal Emps. v. United States*, 905 F.2d 400, 406 (D.C. Cir. 1990) ("[T]he federal judiciary is ill-equipped to conduct reviews of the nations' military policy."). *Mass. v. EPA*, 549 U.S. 497, 527 (2007) ("an agency has broad discretion to choose how best to marshal its limited resources and personnel to carry out its delegated responsibilities."); *In re Barr Labs., Inc.*, 930 F.2d 72, 76 (D.C. Cir. 1997) (declining to enter an injunction compelling the Food and Drug Administration to act because courts "have no basis for reordering agency priorities).

In no area is the scope of judicial inquiry more limited than that of immigration legislation. *See Fiallo v. Bell*, 430 U.S. 787, 792 (1977). The Supreme Court has "long recognized the power to expel or exclude aliens as a fundamental sovereign attribute exercise by the Government's political departments largely immune from judicial control." *Shaughnessy v. Mezei*, 345 U.S. 206, 210 (1953). The Court should deny Plaintiffs' unprecedented request for special treatment under U.S. immigration laws, which would affirmatively alter—rather than preserve—the status quo. Plaintiffs do not identify any final agency action taken by USCIS. Plaintiffs point to no statute or regulation that gives them a clear right or USCIS a duty to grant the requested relief – to hold unused visa numbers, or consider a visa reserved at the time the application is filed.

Instead, Plaintiffs contend that USCIS's implementation of two different statutes is inconsistent. ECF 19.1, pp. 12-13. This argument is a futile attempt to create a controversy that does not exist. Section 1184(g)(1) limits the annual number of temporary foreign workers who may be granted H-1B nonimmigrant visas; and 8 U.S.C. § 1151(d) limits the annual number of EB immigrant visas each year. Plaintiffs allege USCIS *should* reserve the visa number for EB immigrant visas at the time the application is filed, rather than when the application is approved, as it does for H-1B nonimmigrant visas applicants. Plaintiffs cite no authority requiring USCIS to take such action, nor can they as there is no statutory basis for their proposal.

Further, Plaintiffs rely on three court cases issued outside this Circuit to argue that this Court has authority to reserve visa numbers. Plaintiffs admit that in one of those cases the court "never reached the merits of the district court's authority to issue post-fiscal year relief." ECF 19.1, p 11 (citing *Almaqrami v. Pompeo*, 933 F.3d 774, 780 (D.C. Cir. 2019)). Unlike here, plaintiffs in *Almaqrami* brought suit challenging DOS's *denial* of their visas *after* the statutory time period for processing diversity visas for in the FY expired and thus, the issue was whether the claims were moot, not unreasonable delay. Prior to the end of the fiscal year, the district court had ordered DOS to hold unused visa numbers for potential processing of plaintiffs' diversity visas. *Id*. at 782. These facts present a totally different scenario than here, where USCIS must follow the valid and unchallenged INA provisions requiring it to roll-over unused EB visa numbers issued by DOS, who is not a party to this suit. *See* 8 U.S.C. § 1151(c)(1)(A); 8 U.S.C. § 1153(c)(3)(C).

The facts in the remaining two cases are also distinguishable from the sparse facts alleged by Plaintiffs here. *See Paunescu v. I.N.S.*, 76 F. Supp. 2d 896, 902 (N.D. Ill. 1999) (right to have their diversity applications adjudicated because delay of over two years was unreasonable*); Przhebelskaya v. U.S. Bureau of Citizenship & Immigr. Servs.*, 338 F. Supp. 2d 399, 405-06

(E.D.N.Y. 2004) (right to have their diversity applications adjudicated where USCIS denied the diversity applications, then reopened after suit was filed prior to end of FY, but did not re-adjudicate by the end of the year because the adjudicating officer, lacking knowledge of the FBI's action causing delay, did not adjudicate before DOS informed that all allotted visa numbers had been used). Moreover, plaintiffs in *Paunescu*, *Przhebelskaya* and *Almaqrami* sought to hold visa numbers for the three individuals in each case, but did not seek the broad programmatic changes sought here for the 196 Plaintiffs and all others similarly situated. *See* ECF 19.1, pp. 12 & 14 ("the court should construe the immigrant visa allocation statute 8 U.S.C. § 1151 consistently with 8 U.S.C. § 1184(g)" and "hold Adjustment of Status visa numbers at the time of filing . . . ."); *id.*, p. 22 (the Court should order Defendants to hold all unused EB visas for the next year, or order Defendants to consider a visa number reserved at the time the application is filed). As the *Almaqrami* court stated, "[t]o be sure, [*Paunescu* and *Przhebelskaya*] required the government to comply with a prior order to *process* applications. . . but they offer useful examples, not binding models, and neither of those courts limited their holdings to the precise scenario they confronted." *Id.* (original emphasis).

Plaintiffs recognize that "Congress has come up with a complicated system for allocating the visas" that includes 8 U.S.C. § 1151(d), which "clearly refers to the visas being allocated in the fiscal year." ECF 19.1, pp. 12-13. Indeed, "it is DOS, not USCIS, that issues immigrant visa numbers." *Zixiang Li v. Kerry*, 710 F.3d 995, 1000 (9th Cir. 2013) (citing *De Avilia v. Civiletti*, 643 F.2d 471, 475 (7th Cir.1981) (stating that DOS is responsible for issuing immigrant visas); *see also Przhebelskaya*, 338 F. Supp. 2d at 401 (DOS administers the diversity lottery generally, USCIS is responsible for adjudicating the diversity visa applications). And clearly, Congress contemplated that USCIS will probably not adjudicate every allocated visa within the fiscal year

when it enacted 8 U.S.C. § 1151(c)(1)(A) and 8 U.S.C. § 1153(c)(3)(C), requiring USCIS to roll-over any unused EB visa number to the subsequent FY's family-sponsored limit.

As stated in *Li*, 8 U.S.C. § 1153(e)(1) "is silent about the order in which USCIS must approve applications for adjustment of status after DOS has allocated immigrant visa numbers." 710 F.3d at 1000. The court also held that USCIS did not have a specific duty to provide the relief plaintiffs requested – to create or maintain any particular system for monitoring priority dates or number of pending applications for immigrant visas to eligible applicants in the EB third preference category. 710 F.3d at 1001. "Instead, USCIS's responsibilities are carefully circumscribed and tied to the actions of other agencies." *Id*. (citing 8 C.F.R. § 245.2(a)(1), (a)(5)(ii) (giving USCIS jurisdiction to adjudicate applications for adjustment of status but forbidding USCIS to approve adjustment of status until |DOS has allocated an immigrant visa number)).

The court in *Li* further stated that even DOS had no authority under any statute or regulation to recapture and reallocate during current year immigrant visa numbers from previous years, and thus noncitizens claims requiring DOS to take visa numbers from one year and allocate them to another year were moot. *Id*. at 1001-02. "Congress has established annual numerical limits on the number of immigrant visas." *Id*. at 1001 (citing 8 U.S.C. §§ 1151 (setting a worldwide limit), 1152 (setting a per-country limit). Even in the few instances when a visa number is returned to DOS for reallocation," DOS must reallocate the visa numbers 'within the fiscal year in which the visa was issued.'" *Id*. at 1002 (citing 22 C.F.R. § 42.51(c)). "It does not matter whether administrative delays and errors are to blame for an alien not receiving a visa number on time. Once a visa number is gone, it cannot be recaptured absent an act of Congress." *Id*. The *Li* court further relied on the U.S. Supreme Court decision in *INS v. Pangilinan*, 486 U.S. 875, 884 (1988), which states that a noncitizen who seeks political rights in this country can only obtain them upon terms specified by

Congress, not from the courts whose duty is to rigidly enforce the legislative will. *Id*. at 1003. "Thus, because employment-based visa numbers expire at the end of a fiscal year, a court cannot order an agency to recapture those numbers contrary to Congress's clear statutory command." *Id*. Moreover, the court dismissed plaintiffs' claims seeking prospective relief, to compel USCIS and DOS to make copies of waiting lists for visas publicly available, and to waive the fees for Plaintiffs to renew their employment authorizations while waiting for immigrant visa numbers. *Id*. at 1003. Again, plaintiffs cited "no authority suggesting that these are discrete agency actions Defendants are legally required to take." *Id*.

Similar to *Li*, USCIS has no duty to provide, and Plaintiffs have no right to receive, the alternative relief Plaintiffs seek which would alter the EB visa program created by Congress and reorder the priorities of the USCIS. Plaintiffs are not entitled to an order eliminating Defendants' important role in managing this complex system simply because they are dissatisfied with the current processing procedures for this high-demand visa program.

**V.    Plaintiffs cannot show irreparable harm, the public interest weighs heavily against the relief Plaintiffs seek, and the requested relief would result in severe hardship.**

The Court should deny Plaintiffs' Motion because Plaintiffs cannot show irreparable harm. They do not show a guarantee that USCIS will approve their Applications. Also, adjustment of status applicants are eligible to apply for advance parole and employment authorization, which allows them to travel and work while their adjustment applications are pending. 8 U.S.C. § 212(d)(5); 8 C.F.R. §§ 245.2(a)(4)(ii), 274a.12(c)(9). Additionally, amongst the current Plaintiffs, 154 are EB3 applicants. *See* charts, Ex. 1 & 2. USCIS estimates that any increase in the available EB3 category visa numbers would not increase the number of visas available to applicants from India or China because any such additional EB3 visa numbers will flow to applicants from the rest of world countries before they become available to nationals

from India or China.  Ex. 3, Parker Decl., at ¶ 9.  Plaintiffs in the EB1 and EB2 category are expected to have visas available in the coming FY 2022, so the September 30 deadline does not "harm" them. *Id*., at ¶¶ 7& 8.

Additionally, Plaintiffs request relief that weighs heavily against the public interest and would result in severe hardship for other prospective visa applicants waiting for adjudication who Plaintiffs attempt to jump ahead in line. Plaintiffs' request – that the Court require USCIS to adjudicate their applications by September 30, 2021 and reserve EB visas for Plaintiffs – would delay and disrupt the Government's ability to administer the visa program in accordance with the INA and agency regulations. *New Motor Vehicle Bd. of California v. Orrin W. Fox Co.*, 434 U.S. 1345, 1351 (1977) ("any time a State is enjoined by a court from effectuating statutes enacted by representatives of its people, it suffers a form of irreparable injury"). Plaintiffs' requested relief would necessarily require the Court to order USCIS to reserve visa numbers for Plaintiffs' visa petitions, rather than roll-over the visa numbers, in violation of the INA and regulations. It is far from certain that Plaintiffs could meet all requirements necessary to obtain the desired visas, and even if they could, their requested relief would come at the expense of USCIS violating its obligations under the statute.

## CONCLUSION

Plaintiffs' claims should be severed and transferred to the district where the claim is being processed. Alternatively, any claims that remain in this District should be dismissed.

Respectfully submitted,
Jonathan F. Lenzner
Acting United States Attorney


_____/s/_____

Vickie E. LeDuc (Bar No. 805577)
Assistant United States Attorney
36 S. Charles Street, Fourth Floor
Baltimore, Maryland 21201
410-209-4800
Vickie.LeDuc@usdoj.gov
*Counsel for Defendants*