# EXHIBIT 3

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| ATREYI CHAKRABARTI, et al., | * | |
| | * | |
| Plaintiffs, | * | |
| v. | * | Civil Action No. PJM-21-1945 |
| | * | |
| U.S. CITIZENSHIP AND IMMIGRATION SERVICES, et al., | * | |
| | * | |
| | * | |
| Defendants. | * | |
| | ******** | |

# Declaration of Andrew Parker

I, Andrew Parker, hereby declare under penalty of perjury, as follows:

1. I am the Branch Chief of the Residence and Admissibility Branch (RAB) within the Office of Policy & Strategy (OP&S) of U.S. Citizenship and Immigration Services (USCIS). As Branch Chief, I oversee the agency's policies for employment-based (EB) adjustment of status and coordinate on visa policy with the Department of State (DOS).

2. I have served as the Branch Chief of RAB since October of 2019. Prior to assuming my role as Branch Chief of RAB, I served as an Adjudications Officer within the Residence and Naturalization Division of OP&S for two years, in which role I was the lead subject matter expert on employment-based adjustment of status and the coordinator of our visa policy efforts with the DOS. Prior to my work with OP&S, I served as a Supervisory Immigration Services Officer at the Baltimore Field Office of USCIS. I started my career with USCIS as an Immigration Services Officer at the Baltimore Field Office in 2012.

3. I submit this declaration in order to provide an overview of the visa allocation process and actions taken by USCIS to use visa numbers in light of the Coronavirus health emergency. The matters contained in this declaration are based upon my personal knowledge and on information provided to me by the DOS and other USCIS employees in the course of my official duties as Branch Chief in RAB.

**The Visa Allocation Process**

4. The Immigration and Nationality Act (INA), 8 U.S.C. §§ 1101–1537, governs how foreign nationals obtain visas to enter and permanently reside in the United States. Under

INA 201(d), 8 U.S.C. 1151(d), the worldwide level of EB immigrants for a fiscal year (FY) is 140,000 plus the "difference (if any) between the maximum number of visas which may be issued under section 203(a) relating to family-sponsored immigrants during the previous fiscal year and the number of visas issued under that section during that year." In FY 2020, the difference between the available family-sponsored visa numbers and the number of visas issued was 122,288. As a result, the FY 2021 EB annual limit was 140,000 plus 122,288, or 262,288.

5. Under INA 202(a)(2), 8 U.S.C. 1152(a)(2), "the total number of immigrant visas made available to natives of any single foreign state or dependent area under subsections (a) and (b) of section 1153 of this title in any fiscal year may not exceed 7 percent (in the case of a single foreign state) or 2 percent (in the case of a dependent area) of the total number of such visas made available under such subsections in that fiscal year." Accordingly, there is a 7 percent annual per-country limit that applies to all of the family-sponsored and EB preference categories combined. The 7 percent per country limit does not apply on a per-category basis. For example, the total annual family-sponsored and EB limit for FY 2021 is 226,000 plus 262,288, or 488,288. Natives of a single foreign state may receive up to 7 percent of that total, or 34,180 visas. However, if natives of that single foreign state only use, for example, 5,000 family-sponsored visas, they could use 29,180 EB visas, divided in any way between the various categories. Further, under INA 202(a)(5), 8 U.S.C. 1152(a)(5), if the number of available visas within a particular EB category exceeds the demand for those visas within a calendar quarter, then the remaining visa numbers may be used without regard to the per-country limit in INA 202(a)(2). Visa numbers that roll over from the prior year's unused family-sponsored visa numbers are allocated without regard to the per-country limit only if the number of available visas exceeds demand within a particular category.

6. The chart below shows the number of EB visas available (the limit) versus how many were used by fiscal year, -- from 2018 through the projected number of visas that will be available in FY 2022.

| FY | Total Used | Limit |
|---|---|---|
| 2018 | 139,483 | 140,292 |
| 2019 | 140,586 | 141,905 |
| 2020 | 147,153 | 156,253 |
| 2021 | 148,694 (as of 08/30/21) (179,570 projected total for FY 21) | 262,288 |
| 2022 | | 290,000 (estimated) |

As of August 30, 2021, this chart shows that 148,694 EB visa numbers have been used. This includes 132,600 used by USCIS (through August 30) and 16,094 used by DOS (through July 31 – DOS updates their totals monthly). USCIS projects that by the end of FY21 a total of approximately 179,570 employment-based numbers will be used out of a total limit of

262,288. USCIS is on track to approve more EB adjustment of status applications than it has since FY 2005.

7. USCIS estimates that the available visa numbers for the EB1 category (employment-based first preference as defined in 8 U.S.C. 1153(b)(1)(A)) will exceed demand for fiscal year 2022 (FY22) and that any additional numbers added to the limit above the current projections will not make any difference in EB1 visa availability for noncitizens who already have pending adjustment of status applications.  In other words, because the estimated limit of available numbers for EB1 in FY22 already exceeds the estimated demand, there will be visas available for every EB1 applicant with a pending adjustment of status application in FY22.  Adding additional visas to the annual limit would have no effect on EB1 applicants with pending applications.

8. Similarly, USCIS estimates that the availability of visa numbers for the EB2 categories (employment-based second preference as defined in 8 U.S.C. 1153(b)(2)(A)) will exceed demand from countries other than India and China for FY22 and that any additional numbers added to the cap above the current projections will not make any difference in EB2 visa availability for noncitizens who already have pending adjustment of status applications.  In other words, there will be visas available in FY22 for every EB2 applicant who currently has a pending adjustment of status application.  Adding additional visas to the annual limit would have no effect on EB2 applicants with pending applications.

9. Additionally, USCIS estimates that an increase in the available EB3 category (employment-based third preference as defined in 8 U.S.C. 1153(b)(3)(A)) would not result in an increase in India/China availability because any such additional EB3 visa numbers will flow to applicants from the rest of world countries before they become available to nationals from India/China.  This is the result of the per-country limits that impact India and China, allowing nationals from the rest of the world to receive a visa number ahead of Indian and Chinese nationals after India and China use a specified portion of the total.

10. At the end of the fiscal year, the unused EB visa numbers, if any, are required by statute to roll over and are included in the calculation of the subsequent fiscal year's family-sponsored limit.  Under INA section 201(c)(1)(A) (8 U.S.C. 1151(c)(1)(A)) and INA section 201(c)(3)(C) (8 U.S.C. 1153(c)(3)(C)), any unused EB visa numbers roll over into the next fiscal year's family-sponsored limit using a formula in INA section 201(c)(1)(A) that subtracts the number of immediate relatives of U.S. citizens who were issued visas or otherwise acquired lawful permanent resident status during the prior year.  Certain noncitizens paroled into the United States in the second preceding fiscal year are also subtracted from the family-sponsored limit.  The statute establishes a floor of 226,000 for the calculation of the family-sponsored limit under INA 201(c)(1)(A).

    Congress structured the calculation of the family-sponsored limit in INA section 201(c)(1)(A) in such a way that unused visa numbers would not roll over between the family-sponsored and employment-based categories and accumulate indefinitely if there

were to be a significant number of parolees and immediate relatives.  Given the very high volumes of immediate relatives who receive immigrant visas or otherwise acquire lawful permanent resident status every year, while the unused EB visa numbers always roll over, the family-sponsored limit typically defaults to the floor of 226,000 as Congress mandated in the statute.

**Actions Taken to Respond to Impact of COVID on USCIS' Issuance of EB Visas**

11. USCIS and its partners at the Department of State (DOS) have demonstrated their commitment to the use of the available family-sponsored and EB visa numbers. This commitment has not wavered even in the face of the pandemic which has reduced the resources and operational capacity of both agencies.

    Two key issues have hindered USCIS' ability to fully use the available EB visa numbers in FY2021:
    - Ongoing restrictions on USCIS and DOS operations due to COVID-19.
    - Resource limitations for restoring and expanding processing capacity.

    *Planning for FY 2021:*

12. As DOS suspended routine visa services in March 2020, their Visa Office informed USCIS that a very high number of unused family-sponsored preference visa numbers would be added to the EB annual limit in FY 2021.  Formal FY 2021 planning began with an interagency summit in July 2020.  Throughout August and early September 2020, USCIS and DOS reviewed the available data to project FY 2021 EB demand and USCIS October 1, 2020 inventory.  At the end of August 2020, the two agencies held a follow-up summit to complete planning for FY 2021.  USCIS and DOS finalized the October 2020 Visa Bulletin in early September, with the goal of encouraging a sufficient volume of noncitizens to apply for adjustment of status within the first quarter of FY 2021 to reach the annual limit.

    *Actions that USCIS has taken to attempt to use all of the FY 2021 EB Visa Numbers:*

13. USCIS has taken proactive steps, in coordination with it partners at DOS, to maximize the issuance of visas despite numerous operational challenges caused by the COVID-19 pandemic.  **As a result of these efforts, USCIS is on track to approve more EB adjustment of status applications than it has since FY 2005.**  USCIS has prioritized EB adjustment of status applications during every step of processing and adjudication during FY 2021.  USCIS continues to make processing and resource allocation decisions to increase the pace of adjudications and limit the potential for EB visa numbers to go unused.  Among the actions that USCIS has taken during FY 2021 to maximize EB visa use are the following:
    - Based on a multi-year study of EB adjustment of status adjudications, USCIS implemented a risk-based interview determination for these applications in March of 2020.  Since that time, most are adjudicated without interview.

- Through the end of FY 2020, USCIS continued to review and prepare EB adjustment of status applications for which visas would become available in October of 2020 for final adjudication.
- Worked collaboratively with USCIS partners at DOS to ensure that the dates in the Visa Bulletin were set at a level to allow the filing of sufficient new EB adjustment of status applications early in FY 2021.
- Allowed applicants to file using the Dates for Filing chart in the DOS Visa Bulletin during the first quarter of FY 2021.
- Prioritized the receipt and processing of the EB adjustment of status workload at our Lockbox intake facilities.
- Redistributed workloads between Lockbox intake facilities, and redirected newly-filed EB adjustment of status applications, in order to improve processing and reducing delays in the initial intake and receipt of applications.
- Expanded Lockbox intake facility processing capacity.
- Provided overtime and supplemental USCIS staff to the USCIS employees working with its Lockbox intake facilities.
- Prioritized the processing of the EB adjustment of status workload at the USCIS National Benefits Center.
- Restored contractor processing capacity at the USCIS National Benefits Center.
- Prioritized the adjudication of Form I-140, Immigrant Petition for Alien Worker, at USCIS Service Centers based on visa availability (after accounting for filings with premium processing).
- Reused biometrics previously provided by adjustment of status applicants to the greatest extent possible, freeing up resources at our Application Support Centers (ASCs) for other applicants.
- Prioritized the scheduling of biometrics appointments at ASCs for EB adjustment of status applicants.
- Expanded hours at certain ASC locations to gain additional capacity for biometrics appointments for EB adjustment of status applicants.
- Redistributed EB adjustment of status workload between offices and directorates to match workloads with available resources.
- Provided overtime funds to USCIS employees processing and adjudicating EB adjustment of status applications.

14. In addition, one of the significant challenges that USCIS currently faces relates to the lack of a valid Form I-693, Report of Medical Examination and Vaccination Record.  In order to demonstrate eligibility for adjustment of status, applicants in the EB preference categories are required to provide a valid Form I-693.  However, the practice within the applicant community has been to avoid providing the Form I-693 at the time of filing and instead only provide it when requested through a Request for Evidence (RFE).  A significant percentage of individuals with pending EB adjustment of status applications have not yet provided a Form I-693 and USCIS cannot approve their applications.  USCIS has taken the following steps to address this issue:

- Aggressively moved to identify applications with a missing or invalid Form I-693 and issue RFEs.

- Directly contacted applicants using email, text messages, and phone calls to encourage them to submit the Form I-693.
- Issued notices and communication materials to encourage applicants to submit Form I-693 concurrently with their adjustment of status applications.
- Temporarily extended the validity period for Form I-693 from two years to four years through the end of FY 2021.

I declare under the penalty of perjury, pursuant to 28 U.S.C. § 1746, that the foregoing is true and correct to the best of my knowledge.

Dated: September 2, 2021

*Andrew Parker*
Andrew Parker
Branch Chief of RAB
OP&S, USCIS