# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MARYLAND

| | |
|---|---|
| **CHAKRABARTI, et al.** | |
| Plaintiffs, | Civil Action No.:  8:21-cv-01945-PJM |
| v. | |
| **USCIS, et al.** | |
| Defendants | |

## PLAINTIFFS' OPPOSITION TO MOTION TO SEVER AND TRANSFER
## AND RESPONSE BRIEF IN SUPPORT OF PRELIMINARY INJUNCTIVE RELIEF

**Cases**

*Air Line Pilots Ass'n, Int'l v. Civil Aeronautics Board*,
750 F.2d 81 (D.C. Cir. 1984) ........................................................................................ 16

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009) ...................................................................................................... 15

*Barrios Garcia et al. v. DHS et al*,
Nos. 21-1037/1056/1063 (6th Cir. Sept. 13, 2021) ................................................ 18, 19

*Ben'Israel v. Glob. Mgmt. Sols., Inc.*,
WDQ-11-0257, 2014 WL 6490206 (D. Md. Nov. 18, 2014) ..................................... 2, 4

*Cai v. Gonzales*,
AW-07-1702, 2008 WL 11366471 (D. Md. July 14, 2008) ........................................ 18

*Davidson v. District of Columbia*,
736 F. Supp. 2d 115 (D.D.C. 2010) .............................................................................. 3

*Disparte v. Corp. Exec. Bd.*,
223 F.R.D. 7 (D.D.C. 2004) ........................................................................................... 3

*Gomez v. Trump*,
490 F.Supp. 3d 276 (D.D.C. 2020) ........................................................................ 11, 13

*Gonzalez v. Cuccinelli*,
985 F.3d 357 (4th Cir. 2021) ....................................................................................... 14

*Gulf Coast Mar. Supply, Inc. v. United States*,
218 F.Supp. 3d 92 (D.D.C. 2016) ................................................................................ 20

*Gyau v. Sessions*,
2018 WL 4964502 (D.D.C. Oct. 15, 2018) .................................................................... 8

*In re Core Commc'ns, Inc.*,
531 F.3d 849 (D.C. Cir. 2008) ..................................................................................... 16

*Lujan v. Defenders of Wildlife*,
504 U.S. 555 (1992) ..................................................................................................... 10

*Nio v. DHS*,
270 F.Supp. 3d. 49 (D.D.C. 2017) ............................................................................. 16

*Oeste v. Zynga, Inc.*,
Civil No. GLR-20-1566, 2021 WL 1785139, (D. Md. May 5, 2021) ........................... 5

*Pickett v. Hous. Auth. Of Cook Cty.*,
114 F.Supp. 3d 663 (N.D. Ill. 2015). ......................................................................... 20

*Pinson v. U.S. Dep't of Just.*,
74 F. Supp. 3d 283 (D.D.C. 2014) ............................................................................... 3

*Spokeo, Inc. v. Robins*,
136 S. Ct. 1540 (2016) ............................................................................................... 10

*Telecomms. Research & Action Ctr. v. FCC*,
750 F.2d 70 (D.C. Cir. 1984) ............................................................................... 15, 17

*Town of Chester, N.Y. v. Laroe Estates*, *Inc.*,
137 S. Ct. 1645 (2017) ............................................................................................... 10

*Trs. of the Plumbers and Pipefitters Nat'l Pension Fund v. Plumbing Servs., Inc.*,
791 F.3d 436 (4th Cir. 2015) ....................................................................................... 6

*United States v. Al-Hamdi*,
356 D.3d 564 (4th Cir. 2004) ....................................................................................... 2

*Wash. All. of Tech. Workers v. U.S. Dep't of Homeland Sec.*
892 F.3d 332 (D.C. Cir. 2018) ................................................................................... 15

**Statutes**

28 U.S.C. § 1391(e) ............................................................................................... 5, 6, 7
28 U.S.C. § 1404(a) ............................................................................................... 5, 6, 9
8 U.S.C. § 1151(c)(1)(A) ............................................................................................ 12
8 U.S.C. § 1252(a)(2)(B)(ii) ................................................................................. 12, 14

**Rules**

Fed. R. Civ. P. 20(a) .............................................................................................. 2, 4, 7
Federal Rule of Civil Procedure 12(b)(6) ................................................................. 13

**Other Authorities**

136 Cong. Rec. H8629-02 (1990) .............................................................................. 10

H.R. Rep. No. 82-1355 (1925)..................................................................................................... 10

## INTRODUCTION

Plaintiffs are 196 Indian and Chinese nationals who have had applications for permanent residency pending with United States Citizenship and Immigration Services (USCIS) since before December 31, 2020.  Each of them is the beneficiary of an I-140 petition for a foreign worker, approved by the USCIS.  Each paid the $1,225 filing fee to USCIS for their application for permanent residency.  And each is in imminent danger of seeing their application delayed for years or decades due to USCIS's programmatic failure in failing to adjudicate employment-based applications during the fiscal year.  Despite these common facts, Defendants argue Plaintiffs failed to show that their cases "are related *in any way* to each other."  ECF No. 28-1 at 1 (emphasis in original).  Because Plaintiffs' claims arise from the "same transaction, occurrence, or series of transactions or occurrences" and because the questions of law and fact are common to all plaintiffs, joinder is appropriate. Fed. R. Civ. P. 20(a).  Because Defendants are headquartered within this district and because the Plaintiffs' challenge is to Defendants' policies which equally impact adjustment of status applications around the country, venue in the District of Maryland is proper under 28 U.S.C. § 1391(e).  In addition, this district is most convenient for the parties and witnesses and furthers judicial economy. The Court should deny Defendants' motion to sever Plaintiffs' claims and transfer them around the country for over a hundred U.S. District Court judges to have to adjudicate the same legal claims.  Rather, the Court should keep the claims joined and adjudicate these common claims in one consolidated case in the district where the Defendant whose policies are challenged resides.

Absent intervention from the Court, approximately 90,000 visas will evaporate, creating even greater backlogs for Plaintiffs (and others).  Defendants' response declines to engage with arguments, instead focusing nearly exclusively on jurisdiction and Defendants' own Motions to

Dismiss and Transfer Venue. Arguments not made in their response are deemed waived. *United States v. Al-Hamdi*, 356 D.3d 564, 571 n.8 (4th Cir. 2004).   As explained in Plaintiffs' memorandum in support of the motion for preliminary injunction and herein, Plaintiffs have demonstrated that they have standing and that (1) they are likely to succeed on the merits, (2) they are likely to suffer irreparable harm absent an injunction, (3) the balance of hardships weighs in Plaintiffs' favor, and that (4) the injunction serves the public interest.

## ARGUMENT

### I.      The Plaintiffs claims should remain in the District of Maryland

Permissive joinder requires Plaintiffs to satisfy two conditions: the claims must "aris[e] out of the same transaction, occurrence, or series of transactions or occurrences" and a "question of law or fact common to all plaintiffs [must] arise in the action." *Ben'Israel v. Glob. Mgmt. Sols., Inc.*, WDQ-11-0257, 2014 WL 6490206, at *3 (D. Md. Nov. 18, 2014) (quoting Fed R. Civ. P. 20(a)). Courts enjoy wide discretion over joinder of parties to promote trial convenience and expedite the final determination of disputes. *Id*. (citing *Aleman v. Chugach Support Servs., Inc.*, 485 F.3d 206, 218 n. 5 (4th Cir. 2007).

Plaintiffs consist of 196 employment-based applicants for lawful permanent residency filed before December 31, 2020; those applications are all pending before the Defendant agency.  The allegations concern both the unreasonable delay in the adjudication of those applications and the agency's inconsistent interpretation in the regulatory language in determining when a visa number is used.

#### A. *Plaintiffs' claims should be heard together.*

Plaintiffs' claims are appropriately joined.  Each individual challenges the agency's interpretation of when a visa number is used and all request the court to compel action from the

unreasonable delay on employment-based applications filed before December 31, 2020.  To satisfy the "same transaction or occurrence" prong of Rule 20(a), the claims must be logically related to each other. *See Davidson v. District of Columbia*, 736 F. Supp. 2d 115, 119 (D.D.C. 2010). A party cannot join another party who engaged in similar behavior but who are otherwise unrelated; some concerted action is required. *Pinson v. U.S. Dep't of Just.*, 74 F. Supp. 3d 283, 289 (D.D.C. 2014). In addition, Rule 20(a) requires some common question of law or fact as to all plaintiffs' claims. *Disparte v. Corp. Exec. Bd.*, 223 F.R.D. 7, 10–11 (D.D.C. 2004) (citation omitted).

While the underlying applications for permanent residency are distinct, the facts on which the claims will turn—Defendants' over-nine-month delay in processing Plaintiffs' cases despite visa numbers being set to disappear at the end of the fiscal year and Defendants' inconsistent interpretation of the "visa number used" regulatory language—are common to all Plaintiffs. The injury Plaintiffs will suffer is due to the Defendants' interpretation of the "visa number used" language and the unreasonable delay resulting from a failure to prioritize adjudications with the looming September 30 deadline.  At the September 1, 2021, Status Hearing, the USCIS Acting Deputy Director Tracy Renaud reaffirmed that prioritization is a national, headquarters-level determination:

> Court: Who is it that makes the determination of what priorities should be honored?
>
> Ms. Renaud: At a very high level, frankly, it's the director, and so that's one of the things every incoming director we work with to stay where –
>
> Court: You're talking about the national director of the service, the regional director, who?
>
> Ms. Renaud: Well, it starts with the director of the agency the Senate confirmed, which is Ur Jaddou …[1]

---

[1] "Transcript of Status Hearing before the Honorable Peter J. Messitte, United States District Judge" at 33, PJM-21-2070 (September 1, 2021).

3

Plaintiffs' claims should be heard together as they each challenge the agency-wide interpretation of regulatory language and whether the processing timeframe is reasonable given the fiscal year deadline. Plaintiffs' injury is two-fold: the unreasonable delay will impact future employment-based visa numbers such that Plaintiffs will need to wait even years or decades longer and, for those Plaintiffs with children approaching 21 years of age, the loss of the ability of those derivative children to become lawful permanent residents, both because of the delay and the agency's interpretation of when a "visa number" is used.  The personal impact of those injuries may land differently for different plaintiffs, but the injury—delay of processing and the potential loss of eligibility for permanent residency entirely—is consistent. *See* ECF 11, ¶ 8; *see also Ben'Israel v. Glob. Mgmt. Sols., Inc.*, WDQ-11-0257, 2014 WL 6490206 (D. Md. Nov. 18, 2014). The unreasonable delay alleged by Plaintiffs is agency-wide in scope and consistent across the agency's Service Centers, National Benefits Center, and the 19 field offices currently processing the Plaintiffs' applications.

Plaintiffs' claims all arise from agency-wide delay, failure to prioritize applications in spite of a fiscal year deadline, and the agency's interpretation of regulatory language.  Plaintiffs' claims will all turn on common facts and questions of law regarding the reasonableness of an over-nine-month delay with a fiscal year deadline approaching and the lawfulness of agency interpretation of regulatory language.  As such, joinder is permitted under Fed. R. Civ. P. 20(a) and the Court should decline to sever Plaintiffs' cases.

### B. *Plaintiffs' claims should be heard before this Court*

A civil action against an officer or agency of the United States may properly be brought "*in any judicial district* in which (A) a defendant in the action resides, (B) a substantial part of the

events or omissions giving rise to the claim occurred… *or* (C) the plaintiff resides if no real property is involved in the action." 28 U.S.C. § 1391(e) (emphasis added).

Even where a case was filed in a proper venue under 28 U.S.C. § 1391(e), it may be transferred to any district where venue is proper "[f]or the convenience of the parties and witnesses, in the interest of justice." 28 U.S.C. § 1404(a).  To prevail on a motion to transfer venue under § 1404, the moving party must show by a preponderance of evidence that the proposed transfer will more conveniently serve the interests of the parties and witnesses and better promote the interests of justice. *Oeste v. Zynga, Inc.*, Civil No. GLR-20-1566, 2021 WL 1785139, at *2 (D. Md. May 5, 2021) (citations omitted).

Venue is proper in this district pursuant to 28 U.S.C. § 1391(e) on multiple independent bases.  First, it is a civil action in which Defendants are the federal officers and an agency of the United States headquartered in this district.  Second, a substantial part of the events or omissions giving rise to the claims occurred in this district.  And third, this case involves no real property and three plaintiffs reside in this district.[2]  The propriety of venue in this district under 28 U.S.C. § 1391(e) is manifest and Defendants nowhere allege otherwise.  As such, it is Defendants' burden as the moving party to show by a preponderance of evidence that the proposed transfer under 28 U.S.C. § 1404(a) will be more convenient for the parties and witnesses *and* that it will better promote the interests of justice.  Defendant's motion to transfer venue fails on both counts.

In evaluating the transfer requests, courts consider (1) the weight accorded to plaintiff's choice of venue; (2) witness convenience and access; (3) convenience of the parties; and (4) the interests of justice.  *Trs. of the Plumbers and Pipefitters Nat'l Pension Fund v. Plumbing Servs.,*

---

[2] Plaintiffs Ritesh Basatwar, Vamsidhar Bhagavathula, and Anshuman Rawat all reside within Maryland.

*Inc.*, 791 F.3d 436, 444 (4th Cir. 2015). Defendants argue that Plaintiffs' choice of venue here should be given little to no weight because "none of the conduct occurred in the forum plaintiff selected" and because "Plaintiffs do not allege that any employee at USCIS headquarters in Maryland has any personal involvement with any [a]pplication." ECF No. 28-1 at 18-19. But Plaintiffs allege that *USCIS policy* counts visa numbers differently in the context of H-1B visa applications and green card applications. ECF No. 11 ¶ 49. Such policy, nationwide in its scope, comes from headquarters, now situated in Maryland. In addition, prioritization decisions are made at a headquarters level as confirmed by Ms. Renaud. Defendants' statement that none of the challenged conduct occurred in this forum is thus inaccurate and their argument that "little to no weight" should be afforded to Plaintiffs' choice of venue is left unsupported. Here, 196 plaintiffs specifically chose counsel, chose to file their claims jointly, and selected this district—a venue unquestionably proper under 28 U.S.C. § 1391(e)—as the place to bring their claims. As such, significant weight should be afforded to Plaintiffs' choice of venue.

Defendants argue that the second factor, the convenience to witnesses, weighs in favor of their motion to transfer. ECF No. 28-1 at 10. In support, they state that the individual officers responsible for adjudications are outside Maryland and that the offices responsible for adjudication are at the site of the administrative record. *Id*. Without directly stating it, Defendants want the Court to infer that any relevant witnesses would be located at the site where applications are being processed rather than at headquarters. Again, Defendants fail to grapple with or even acknowledge the fact that Plaintiffs are challenging nationwide policy. Those responsible for setting nationwide policy are at headquarters. Indeed, at the consolidated hearing held on September 1, 2021, this Court sought statements from USCIS employees at headquarters, not at local offices. To the extent that witnesses will be necessary, it is more likely that they will come from Maryland than from the

service centers or field offices where Plaintiffs' files currently sit.  The convenience to witnesses factor therefore weighs against the transfer of venue.

While asserting that the third factor, the convenience to the parties, weighs in support of transfer, Defendants conspicuously provide no reasoning or argument supporting such assertion. *See* ECF No. 28-1 at 10.  Transfer of venue would be inconvenient for all parties and would be extremely prejudicial to Plaintiffs.  Plaintiffs joined together to bring their claims in this Court with undersigned counsel as their representatives.  As detailed above, joinder of the claims was proper under Fed. R. Civ. P. 20(a) and venue was appropriate on multiple bases under 28 U.S.C. § 1391(e).  Defendants would split one case with common claims up into over a hundred cases strewn about district courts throughout the country.  Plaintiffs would have to either hire local counsel in each district or pay the various *pro hac vice* fees for undersigned counsel, assuming they would have the capacity to take on so many matters. For many plaintiffs, litigating individual claims around the country would likely be cost prohibitive.  In effect, the discretionary transfer of venue would doom most plaintiffs to never having their claims adjudicated on the merits.  While Defendants have attorneys who can litigate on their behalf in any district court, reason dictates that their defense of hundreds of nearly identical claims with common facts and legal arguments various courts around the country would be inconvenient for them as well.  The convenience to the parties factor, glossed over without analysis by Defendants, weighs heavily against transfer of venue.

The final factor, the interests of justice, further militates against the grant of Defendants' motion to transfer venue.  Defendants assert that this factor weighs in favor of transfer because "courts have a local interest in having localized controversies decided at home." ECF No. 28-1 at 10-11 (citing *Gyau v. Sessions*, 2018 WL 4964502, at *2 (D.D.C. Oct. 15, 2018)).  The *Gyau* case,

however, involved one couple filing a challenge to a denial made at a local level. *Gyau*, 2018 WL 4964502, at *1. Here, 196 plaintiffs brought this challenge aimed at national USCIS policy. Despite Defendants' attempt to frame it as such, this is not a localized dispute. Indeed, Plaintiffs request relief in the form of an order that USCIS "hold extra employment-based visa numbers beyond Fiscal Year 2021." ECF No. 11 at 44. Such relief would be implemented at a national level by USCIS headquarters, not by any field office or service center.

Moreover, this case is unique in that it involves a statutory deadline of September 30, 2021. Plaintiffs brought this action on August 3, 2021, when it became clear that USCIS was unlikely to adjudicate their cases by the statutory deadline. ECF No. 2. They filed a motion for a preliminary injunction on August 20. ECF No. 19. With the filing of this reply, the parties will have completed briefing on the preliminary injunction and it will be ripe for decision. Transfer at this juncture would push adjudication on the merits to potentially dozens of district courts around the country with no certainty that they would be able to issue a decision on the merits before September 30. And if no relief is issued prior to September 30, the visa numbers this case seeks to preserve will have disappeared. In effect, the transfer of venue will make it unlikely that the arguments decided on the merits before the statutory deadline and effectively extinguish their legal claims. The interests of justice therefore weigh heavily against transfer of venue.

Where venue is proper under 28 U.S.C. § 1391(e), a motion to transfer can be granted "for the convenience of parties and witnesses, in the interest of justice..." 28 U.S.C. § 1404(a). Here, transfer is inconvenient for the parties, likely fatally prejudicial to Plaintiffs' ability to try to vindicate their rights through litigation, and would damage the interests of justice by making it unlikely that their claims will be heard on the merits before the statutory deadline. In sum, Defendants have failed to show by a preponderance of the evidence that transfer will be more

convenient for the parties and witnesses and that it will better promote the interests of justice.  As such, their motion to transfer under 28 U.S.C. § 1404(a) must be denied.

## II.      Plaintiffs Have Standing

As a threshold matter, Plaintiffs have standing.  To satisfy the standing requirement, a plaintiff must show that she/he has suffered an injury that is "concrete and particularized" as well as "actual or imminent," *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992), and that any injury in fact is fairly traceable to the challenged conduct of Defendants. *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1547 (2016). A plaintiff seeking extraordinary relief, as here, "cannot rest on mere allegations, but must set forth by affidavit or other evidence specific facts that, if taken to be true, demonstrate a substantial likelihood of standing." *Lujan*, 504 U.S. at 561. If one plaintiff establishes standing, the court need not consider the standing of the other plaintiffs to raise that claim. *Town of Chester, N.Y. v. Laroe Estates*, *Inc.*, 137 S. Ct. 1645, 1651 (2017) ("At least one plaintiff must have standing to seek each form of relief requested in the complaint.").

The imminent harm is evident from the Plaintiff's declarations.  *See generally* ECF No. 19-2.  However, the most egregious harm suffered at-hand for several Plaintiffs is the risk of their children losing the ability to become lawful permanent residents of the United States with their family.  For example, one Plaintiff whose son will imminently lose his opportunity to obtain permanent residency is Plaintiff Isukapally, who has been working in the United States lawfully, waiting in line for priority dates to become current, since **2011**.  Plaintiff Isukapally filed his Form I-485 Adjustment of Status on October 29, 2020 with a priority date of July 1, 2014.  *See* Plaintiff Isukapally's declaration at ECF 19-2 at 51.  Plaintiff Isukapally's son turns twenty-one in two years.  If USCIS lets the visa numbers expire and Plaintiff Isukapally's Form I-140 is approved without a current "priority date," by that time, his son will age out of eligibility for permanent

residency, shattering the Isukapally family.  Preservation of the family unit was of Congress's primary goals in enacting the INA.  *See* H.R. Rep. No. 82-1355 (1925).  Indeed, Congress has recognized that "family reunification" is "the cornerstone of U.S. immigration policy," and serves the "national interest."  136 Cong. Rec. H8629-02 (1990).  Thus, harm caused by Defendants' inaction is concrete and immediate.

This harm is redressable by this Court in one of two ways.  First, by ordering the adjudication of Plaintiffs' I-485s, Plaintiffs at least will avoid the long-term damage and family separation caused by Defendants' delays.  Second, this Court may order, in equity, the reservation of these visas that are set to expire, permitting Plaintiffs and those similarly situated to have their applications processed rather than being thrust back into a decades' long backlog.  *See Gomez v. Trump*, 490 F.Supp. 3d 276, 295 (D.D.C. 2020) (reserving diversity visas beyond their statutory expiration).

### III.    The Court has subject matter jurisdiction

Defendants' arguments on this point share a common misunderstanding of this lawsuit.  This is not Plaintiffs requesting expedited processing of their cases due to simple delay.  This is not Plaintiffs asking to jump to the front of the line to the detriment of everyone in the line as a whole.  This is a case where, due to Defendants' inaction, approximately 90,000 immigrant visas will simply evaporate at the end of the fiscal year.  It is a programmatic challenge against a prioritization scheme that frustrates the intent of Congress, that is contrary to the text of Immigration and Nationality Act ("INA"), and that directly and irreparably will harm both the Plaintiffs in this case and the hundreds of thousands of intending immigrants awaiting their spot in line to become current.

Defendants' claims all stem from the same argument: 8 U.S.C. § 1252(a)(2)(B)(ii) divests the Court of jurisdiction to hear claims that are committed to agency discretion, and that 8 U.S.C. § 1255(a), the statute authorizing the adjustment of status of certain intending immigrants is committed to agency discretion. Plaintiffs do not argue either way whether this interpretation of 8 U.S.C. § 1252(a)(2)(B)(ii) is accurate, but rather point to the inapplicability of this line of reasoning in a case as this.

The statutory scheme for immigrant visas to be "rolled over" in the event that the statutory caps found in 8 U.S.C. § 1151 are not reached have a quirk in them that is under-emphasized to the Court. Due to the maximum number of family-based visas available per year, unused employment-based visas in the vast numbers such as here are not recycled. Rather, the approximately 90,000 employment-based visas that are not used by Defendants by the end of the fiscal year will simply evaporate. *See generally* 8 U.S.C. § 1151(c)(1)(A). This effectively puts these visas on a time limit to be adjudicated within the fiscal year, much like a different visa classification – diversity visas. While in the context of diversity visas, the time limit is explicitly laid out,[3] the effect is the same – visas that are not adjudicated by the end of the year will legally disappear, and those who have been selected to receive those visas, whether through the diversity visa lottery or by the rapidly advanced priority dates from October, 2020, will lose their opportunity to immigrate to the United States or have their adjustment of status applications adjudicated.

Given this situation, the court in *Gomez v. Trump*, 490 F. Supp. 3d 276 (D.D.C. 2020) found two orders to be appropriate as the end of the fiscal year loomed: 1) to reserve approximately

---

[3] 8 U.S.C. § 1154(a)(1)(I)(ii)(II) (diversity visa selectees "shall remain eligible to receive such visa only through the end of the specific fiscal year for which they were selected.")

9,000 visas after the statutory deadline due to the Department of State's unreasonable delay in adjudicating diversity visas, *Id.* at 295, and 2) order the Department of State to "undertake good faith efforts, directly and through their designees, to expeditiously process and adjudicate DV-2020 diversity visas . . . by September 30, 2020." *Gomez v. Trump*, 485 F.Supp. 145, 205 (D.D.C. 2020).

Here, the Court is faced with an analogous situation.  90,000 immigrant visas will expire at the end of this fiscal year, and Plaintiffs timely filed a complaint for the unreasonable delay in adjudicating these visas.  Plaintiffs could not bring the case in January or February, as no unreasonable delay had occurred, and Plaintiffs had no reason to believe Defendants would fail to adjudicate so many applications.  Absent intervention from this Court, 90,000 visas will expire, and with them, a backlog that extends for decades will grow even longer.  Defendants have failed in their duty to adjudicate the matters before them, and this Court, in equity, has the power to remedy this harm.

Secondly, the failure to adjudicate approximately 90,000 immigrant visas, and thus let them expire, is contrary to Congressional intent in enacting the immigrant visa system.

Defendants point to several bills passed by Congress to recapture unused employment-based visas that were wasted by agency inaction.  *See* ECF No. 28-1 at 13.  To Defendants, that Congress remedied Defendants' inaction to recapture visas that expired from FY 1999 through FY 2004 demonstrates Congressional intent to permit the agency to allow those visas to expire.  *See id.*  But these bills show quite the opposite.  Congress created a scheme by which a certain number of employment-based immigrants should be granted permanent residency per year.  When the agency has failed in its obligations to these immigrants and let those visas expire, Congress has been forced to fix those errors – indeed for six fiscal years in a row.  Rather than acquiescence of

the agency's practices, Congress felt the explicit need to remedy the harms caused by those practices. Congress need not state that the purpose of a given bill is to right the wrongs of an agency for the clear implication of its action to be drawn. The agency failed to uphold Congress's intent, and thus Congress was forced to fix the agency's failures.

Further, faced with a similar challenge to unreasonable delays in the U visa context, the Fourth Circuit in *Gonzalez v. Cuccinelli*, 985 F.3d 357 (4th Cir. 2021) found that 8 U.S.C. § 1252(a)(2)(B)(ii)'s prescription on judicial review of discretionary decisions did **not** bar review of agency delay in adjudicating plaintiff's petitions for placement on a U visa waitlist. *Id.* at 375. It is true that 8 U.S.C. § 1252(a)(2)(B)(ii) strips the Court of jurisdiction to review many immigration-related delays in the Fourth Circuit, but section 1252(a)(2)(B)(ii) is not an absolute bar to review of immigration delays, and it does not bar review in the present case.

In the end, this is not a simple unreasonable delay case asking for the adjudication of a given application due to the length of time it is taking. It is factually distinct in that, absent court intervention, these visas will be wasted, and applicants will be thrust further into a backlog that will take decades to clear. The Court has jurisdiction to hear these claims notwithstanding any discretion 8 U.S.C. § 1252(a)(2)(B)(ii) grants to Defendants.

## IV. The Amended Complaint alleges sufficient facts to state a claim

Defendants make arguments that Plaintiffs have failed to state a claim, yet do not cite to any basis for how this alleged failure should require the Court to deny Plaintiffs' claims. A motion to dismiss for failure to state a claim on which relief can be granted arises under Federal Rule of Civil Procedure 12(b)(6). To survive such a motion, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 668 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 554, 570 (2007)). The

Court in *Iqbal* explained that "[a] claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. at 678. While the complaint "must provide more than labels and conclusions" the complaint "does not need detailed factual allegations." *Wash. All. of Tech. Workers v. U.S. Dep't of Homeland Sec*. 892 F.3d 332, 343 (D.C. Cir. 2018). Rather, "the factual allegations must be enough to raise a right to relief above the speculative level."  *Id*.  Here, Plaintiffs have more than met this standard.

In conducting a judicial review of an unreasonable delay, courts have looked to the following list of factors established by *Telecomms. Research & Action Ctr. v. FCC*, 750 F.2d 70 (D.C. Cir. 1984) ("TRAC"):

> 1) The time agencies take to make decisions must be governed by a rule of reason;
> 2) Where Congress has provided a timetable or other indication of the speed with which it expects the agency to proceed in the enabling statute, that statutory scheme may supply content for this rule of reason;
> 3) Delays that might be reasonable in the sphere of economic regulation are less tolerable when human health and welfare are at stake;
> 4) The court should consider the effect of expediting delayed action on agency activities of a higher or competing priority;
> 5) The court should also take into account the nature and extent of the interests prejudiced by the delay; and
> 6) The court need not find any impropriety lurking behind agency lassitude in order to hold that agency action is "unreasonably delayed."

*Id.* at 80.

These factors are "not ironclad, but rather are intended to provide useful guidance in assessing claims of agency delay." *In re Core Commc'ns, Inc.*, 531 F.3d 849, 855 (D.C. Cir. 2008) (internal citations omitted). "Each case must be analyzed according to its own unique circumstances," with some factors more applicable in one case than another, give each case "its own slightly different set of factors to consider." *Air Line Pilots Ass'n, Int'l v. Civil Aeronautics Board*, 750 F.2d 81, 86 (D.C. Cir. 1984). Indeed, under TRAC, the ultimate determination of

whether a delay is unreasonable is "a fact intensive inquiry." *Nio v. DHS*, 270 F.Supp. 3d. 49, 66 (D.D.C. 2017).

Although the TRAC factors are the appropriate lens through which to determine whether Plaintiffs have alleged facts sufficient for relief, Defendants do not utilize the factors in their analysis.

Defendants first claim that Plaintiffs have not pointed to "any precise statutory or regulatory provision establishing a specific timetable that clearly reins in USCIS's discretion as to pace of processing." ECF 28-1 at 24. When analyzing unreasonable delay under the APA, there is no requirement that a statutorily imposed deadline has been violated. Yet in the Amended Complaint, Plaintiffs specifically cite to a portion of the Immigration and Nationality Act stating, "It is the sense of Congress that processing of an immigration benefit application should be completed *not later than 180 days after the initial filing of the application.*" 8 U.S.C. § 1571(b) (emphasis added). ECF 11 at 39. Although Plaintiffs recognize that this portion of the INA does not set forth a strict requirement, it favors a finding of unreasonableness during a *TRAC* factor analysis. In particular, prong two looks to "where Congress has provided a timetable or other indication of the speed with which it expects the agency to act, then the enabling statue and statutory scheme may supply content for [the] rule of reason." *TRAC*, 750 F.2d 70, 80 (D.C. Cir. 1984).

Furthermore, Defendants dismiss the deadline set by 8 U.S.C. § 1151(d) as not being a requirement that the EB visas be issued prior to the end of FY 2021, but seemingly ignore that it is an explicit prohibition on their issuance following the end of FY 2021. ECF 28-1 at 24. Defendants sparse analyses on the merits of Plaintiffs Motion offers no argument related to the

reasonableness of Defendants' delay, nor truly do Defendants grapple with any substantive arguments made by Plaintiffs.

Defendants erroneously claim that Plaintiffs allege approximate delays of five to nine months. ECF 28-1 at 24. In fact, in the Amended Complaint, each of the plaintiffs listed in the Parties section have had their applications for adjustment of status pending for approximately nine to eleven months. Plaintiff Chakrabarti, also listed in the Parties section, has had her adjustment application pending for nearly ***nine years***. Nine months is not the maximum amount of time the Plaintiffs in the Amended Complaint have been awaiting adjudication of their visa applications, it is the minimum. Defendants cite *Cai v. Gonzales* as an example of a 21-month processing time that was found not to be unreasonable. *Cai v. Gonzales*, AW-07-1702, 2008 WL 11366471 (D. Md. July 14, 2008). There, Plaintiffs' applications were referred to the FBI for background checks and security screening, during which one Plaintiff's name check was left pending. *Id.* at 1. Furthermore, the defendants in *Cai* based their delay in the fact that the applications could not be adjudicated until visa numbers were available. *Id.* at 4. Here, the facts are distinguishable as Defendants have provided no evidence that any steps have been taken to process Plaintiffs' cases and immigrant visas are currently available for Plaintiffs, though only for a limited time— providing the entire basis of this suit.

Defendants urge the Court to decline to find the agency delay unreasonable because many of Plaintiffs' cases are well within average processing times. ECF No. 28-1 at 27. But the fact that the agency regularly subjects applicants to extensive delay does not make the delay in individual cases reasonable. Earlier this week, the Sixth Circuit addressed programmatic delays in the context of USCIS adjudications of U visa applications. *Barrios Garcia et al. v. DHS et al*, Nos. 21-1037/1056/1063 (6th Cir. Sept. 13, 2021). In response to agency arguments that the delays in that

case were within average processing times, the court explained, "[n]or are we persuaded that USCIS's release of its average U-visa-application processing time should prompt us to decide that Plaintiffs' years-long wait is reasonable. The average adjudication time says little about the unreasonableness of USCIS's delay in Plaintiff's case… We find it unhelpful to fixate on the average snail's pace when comparing snails against snails in a snails' race." *Barrios Garcia*, slip op. at 32.

Given the imminent end of FY 2021, the massive injuries Plaintiffs are subject to, and the two potential forms of relief this Court may order as discussed above—ordering the expedited adjudication of visas or reserving these visas beyond their statutory expiration date—Plaintiffs have met the pleading standards set forth in *Iqbal*.

### V.   Plaintiffs face irreparable harm and relief sought by Plaintiffs weighs heavily in favor of the public interest.

Plaintiffs are currently suffering immediate and irreparable harms due to the delayed processing of their employment-based adjustments. Without the ability to adjust their status to lawful permanent residence, they are subject to regular filing fees to continue to renew their employment authorization documents. Due to current COVID-19 travel bans, Indian and Chinese nonimmigrant visa holders are unable to visit their home countries and return to the U.S. Plaintiffs are forced to pay higher tuition rates for education without the grant of immigrant status. Plaintiffs' children face irreparable harm in the potential years of delay that could result with the non-issuance of these visas. Plaintiffs' children have a limited window of time to be included on their parents' adjustment of status petition—further delays in this process can result in these children aging out and being forced to seek out entirely new routes to lawful permanent residence, restarting their green card process clocks entirely.

Public interest favors rewarding those who have pursued lawful immigration status. Plaintiffs have properly submitted their forms and paid their fees—$1,225 each, plus the same for dependent children and spouses—to USCIS; to force law-abiding Plaintiffs back into potentially decade-long delays while immigrant visas are currently available flies in the face of public interest. Further, "[T]he public interest is seriously disserved by . . . family[] separation. *Pickett v. Hous. Auth. Of Cook Cty.*, 114 F.Supp. 3d 663, 673 (N.D. Ill. 2015). As dependent children lose eligibility for permanent residency, families *will* be separated. Indeed, "[t]he public interest is served . . . by ensuring that government agencies conform to the requirements of the APA." *Gulf Coast Mar. Supply, Inc. v. United States*, 218 F.Supp. 3d 92, 101 (D.D.C. 2016, aff'd, 867 F.3d 123 (D.C. Cir. 2017); *accord League of Women Voters*, 838 F.3d at 12 ("there is a substantial public interest in having governmental agencies abide by the federal laws that govern their existence and operations.") (citation and internal quotation marks omitted). Enforcing the APA favors granting relief, and the public interest heavily favors an immigration system which functions reasonably.

## CONCLUSION

Defendants have failed to meet their burden to show that a transfer of venue would result in greater convenience for the parties or witnesses or would serve the interests of justice. The Court should therefore deny Defendants' motion to sever Plaintiffs' claims and transfer venue.

For the reasons set forth in the memorandum in support of a preliminary injunction and in this reply, Plaintiffs respectfully request that the Court issue a preliminary injunction requiring Defendants adjudicate the Plaintiffs' Adjustment of Status applications by September 30, 2021. In the alternative, the Court should issue a preliminary injunction ordering Defendants to "hold" all unused employment-based visa numbers from Fiscal Year 2021 into Fiscal Year 2022 rather than

letting them "roll over" and expire, so that Plaintiffs can be reasonably assured that their cases will be adjudicated in Fiscal Year 2022. In the alternative, the Court should issue a preliminary injunction ordering Defendants to consider a visa number "reserved" at the time an applicant files her I-485, such that Plaintiffs' cases can be adjudicated in Fiscal Year 2022.

Respectfully submitted this  17th     day of September, 2021,


_____ /s/ Jeff D. Joseph_

JEFF D. JOSEPH
District of MD Bar ID: : 22325
Atty. Reg. No. (Colorado) 28695
Joseph & Hall P.C.
12203 East Second Avenue
Aurora, CO 80011
(303) 297-9171
jeff@immigrationissues.com

CHARLES H. KUCK
Georgia Bar #: 429940
Kuck Baxter Immigration, LLC
365 Northridge Rd, Suite 300
Atlanta, GA 30350
ckuck@immigration.net
*Appearing pro hac vice*


GREG SISKIND
Tennessee Bar #: 14487
Siskind Susser PC
1028 Oakhaven Rd.
Memphis, TN 38119
gsiskind@visalaw.com
*Appearing pro hac vice*

Attorneys for Plaintiffs

## <u>CERTIFICATE OF FILING AND SERVICE</u>

I hereby certify that on September 17, 2021, the foregoing document was served on all parties or their counsel of record through the CM/ECF system.


  /s/ Jeff Joseph
Jeff D. Joseph
Joseph & Hall P.C.
12203 East Second Avenue
Aurora, CO 80011
(303) 297-9171
jeff@immigrationissues.com
D.C. Bar ID: CO0084