IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

|  |  |  |
|---|---|---|
| ATREYI CHAKRABARTI, *et al.*, | ) ) ) | |
| Plaintiffs, | ) ) ) | |
| v. | ) ) ) | Civil Action No. PJM-21-1945 |
| U.S. CITIZENSHIP AND IMMIGRATION SERVICES , *et al.*, | ) ) ) ) | |
| Defendants. | ) ) ) | |

### REPLY IN SUPPORT OF MOTION TO TRANSFER VENUE
### OR DISMISS THE AMENDED COMPLAINT

Plaintiffs have not carried their burden of demonstrating a likelihood of success on the merits, a certainty of irreparable harm, or that the balance of the equities and the public interest tilt in their favor. At the outset, the claims should be severed and transferred because Plaintiffs fail to show in their opposition, ECF 32, that their claims are logically *related to each other*. As discussed in Defendants' motion, ECF 28-1, p. 15, a party cannot join another party who engaged in similar behavior but who are otherwise unrelated; some concerted action is required. And Plaintiffs fail to show that venue is appropriate in this District. Defendants' motion should be granted and the claims should be transferred out of this District.

If the Court does not order that all claims be transferred out of this District, Plaintiffs' claims further fail, among other reasons set forth in Defendants' motion, as follows:

**A. Plaintiffs Have No Standing.**

In Plaintiffs' opposition (ECF 32) and notice of supplemental authority (ECF 34) highlighting *Kassem v. Blinken*, 2021 U.S. Dist. LEXIS 183515 (E.D. Calif., Sept. 24, 2021),[1] Plaintiffs still fail to meet their burden of showing that any individual has suffered an injury that is "concrete and particularized" as well as "actual or imminent and that any injury in fact is fairly traceable to the challenged conduct of Defendants. Plaintiffs were never guaranteed that their Applications would be adjudicated by September 30, 2021, let alone approved. And Plaintiffs merely *speculate* a *risk* of waiting months before becoming permanent residents. *See* ECF 19, pp. 9-10. Such allegation does not demonstrate a "concrete and particularized" as well as "actual or imminent" injury. The only harm Plaintiffs allege is the possibility of having to wait. Indeed, USCIS declarant Andrew Parker states under oath that there will be visas available in Fiscal Year 2022 for every employment-based (EB)1 and 2 applicant with a pending adjustment of status application in FY 22. *See* ECF 28.3, Ex. 3, Parker Decl., ¶¶ 7 & 8. And any increase in EB3 visa numbers will not flow to Plaintiffs as applicants from India/China. *Id*., ¶ 9. Plaintiffs do not, and cannot argue that he or she needs to reapply or pay another filing fee. The Applications remain pending in the next fiscal year in the same order of priority.

Plaintiffs also fail to meet their burden of showing an injury fairly traceable to USCIS. USCIS cannot be responsible for any injury where it follows statutory requirements, 8 U.S.C. § 1151(c)(1)(A) and 8 U.S.C. § 1153(c)(3)(C), to roll-over all unused EB visa numbers to family sponsored visas. Clearly, if Congress wanted to recapture unused EB visa numbers from 2020 and/or 2021, it could do so. Thus, any injuries Plaintiffs suffer is caused by choices made by Congress, not Defendants.

---

[1] The Government filed a Request for Immediate Reconsideration on September 26, 2021. *See* Exhibit 1.

Most all of Plaintiffs' applications were filed in October 2020 and November 2020 during an unprecedented global pandemic that forced the suspension of many of the agency's in-person processing activities. As Plaintiffs point out, the recent increase in EB visa numbers only occurred because of the unused family-based visas that resulted from the global pandemic. *See* ECF 11, Amended Complaint, p. 19; *see also id.*, ¶32 (alleging that the rollover system was created in 1990 and due to increased number of applications, the formula has become less effective in using EB visa numbers). USCIS has adjudicated more visas this year than last year, and is on track to approve more EB applications that it has since FY 2005. ECF 28.3, Ex. 3, Parker Decl., ¶ 6.

Furthermore, any alleged injury is not fairly traceable to USCIS because the Department of State (DOS) uses some of the allotted visa numbers, and the FBI must complete a background check before USCIS can begin adjudicating. Plaintiffs may file, or have already filed, a Form I-131 Application for Travel Document and a Form I-765 Application for Employment Authorization, so that while Plaintiffs wait, they can travel and work and are allowed to stay in the United States. And to the extent a Plaintiff fails to provide a valid Form I-693, Report of Medical Examination and Vaccination Record, at the time the Application is filed, it is the Plaintiff, not USCIS, who is responsible for delaying the processing of the Application.

Finally, any injury cannot be redressed by a favorable decision here where the Court is without subject matter jurisdiction to order Defendants to adjudicate the Applications by September 30 or hold unused visas. And even if the Court has jurisdiction, which it does not, the Court cannot provide a favorable decision because plaintiffs fail to state a plausible claim for relief. For all these reasons, Plaintiffs have failed to establish that they have standing to bring their claims.

**B. Plaintiffs have no right and USCIS has no duty to "hold" extra EB visa numbers beyond this fiscal year, or reserve a visa number at the time the application is filed.**

In their opposition and supplemental authority (ECF 19 & 34), Plaintiffs point to no statute or regulation that gives them a clear right or USCIS a duty to hold unused visa numbers, or consider a visa reserved at the time the application is filed. The diversity visa (DV) cases argued by Plaintiffs in support of their claim were each filed by less than a handful of plaintiffs, for which the courts could analyze the unique facts and circumstances surrounding the particular applications to determine whether to grant relief. The DV program is a totally different program and is administered by DOS. Here, even if the Court did have jurisdiction, there are 196 Plaintiffs who provide sparse allegations about their circumstances and it would be impossible for the Court to analyze the facts and circumstances surrounding these Applications, especially at this 11th hour. Moreover, USCIS is unable to adjudicate this number of cases in the remaining timeframe. "[J]ust as a court may not require an agency to break the law, a court may not require an agency to render performance that is impossible." *Am. Hosp. Assoc. v. Price*, 867 F.3d 160, 167 (D.C. Cir. 2018) (citing *Ala. Power Co. v. Costle*, 636 F.2d 323, 359 (D.C. Cir. 1979); *NRDC v. Train*, 510 F.2d 692, 713 (D.C. Cir. 1974)).

Additionally, these DV cases are wholly distinguishable from the EB visa applications at issue here because the DV statute, 8 U.S.C. § 1151(e)(2)[2], is silent as to what happens to

---

[2] Under the Immigration and Nationality Act ("INA"), "Congress has provided for up to 55,000 immigrant diversity visas to be distributed each fiscal year to foreign nationals that hail from countries with historically low levels of immigration to the United States." *Filazapovich v. Dep't of State*, No. 21-cv-943 (APM), 2021 WL 4127726, at *2 (D.D.C. Sept. 9, 2021) (citing 8 U.S.C. §§ 1151(e), 1153(c)). "Millions of hopefuls enter a lottery for the chance to apply for one of the 55,000 allotted diversity visas." *Id.* (citing *Gomez v. Trump* (*"Gomez I"*), 485 F. Supp. 3d 145, 159 (D.D.C. 2020)). The winners of the lottery "submit an application and various documents to be eligible for a visa number," which can be used only during the fiscal year for which the selectee applied. *Almaqrami v. Pompeo*, 933 F.3d 774, 776–77 (D.C. Cir. 2019).

unused DV numbers at the end of a fiscal year, whereas the EB statute, 8 U.S.C. § 1151(c)(1)(A) and § 1153(c)(3)(C), requires USCIS to rollover unused EB visa numbers into the family-sponsored visa program.

The DV program makes up to 50,000 immigrant visas available annually, drawn from random selection among all entries to individuals who are from countries with low rates of immigration to the United States. *See* https://www.uscis.gov/green-card/green-card-eligibility/green-card-through-the-diversity-immigrant-visa-program.  DV selectees lose the ability to immigrate altogether if not issued a visa by the statutory deadline. 8 U.S.C. § 1154(a)(1)(I)(ii)(II) (noncitizens selected in the DV lottery "shall remain eligible to receive such visa only through the end of the specific fiscal year for which they were selected.").  The INA contains absolutely no rollover provisions for diversity visas.  Section 1151(e)(2) is one of the most straightforward provisions enacted by Congress – "the worldwide level of diversity immigrants is equal to 55,000 for each fiscal year."  No additions, no subtractions, and no requirement that unused diversity visa numbers go to the next year family or EB or any other visa allotments.  *See also*, 22 C.F.R. § 42.33(f) ("[D]iversity immigrant visa numbers . . . will be allotted only during the fiscal year for which a petition to accord diversity immigrant status was submitted and approved. Under no circumstances will immigrant visa numbers be allotted after midnight of the last day of the fiscal year for which the petition was submitted and approved.") (emphasis added).

Although the DV statute is silent, some courts, as cited by Plaintiffs, have determined that the DV statute has some ambiguity that allows the court to order the DOS (not a defendant here) to adjudicate the two or three DV applications brought before such court.  The cases cited by Plaintiffs were erroneously decided.  Courts within the District Court for the District of

Columbia have concluded that there are no grounds to compel adjudication of the diversity visas before the end of the fiscal year and declined a preliminary injunction. *See e.g.*, *Pushkar v. Blinken*, 21-cv-2297 CKK (D.D.C. Sept. 23, 2021) (Ex. 1, Attachment A); *Serakova v. Biden*, 21-cv-2066-TNM (D.D.C. Sept. 24, 2021) (minute order).

Here, the EB statute is very clear about where the unused visas go --to the next year's family sponsored visa allotment. See 8 U.S.C. § 1153 (c)(3)(C): **Worldwide level of family-sponsored immigrants** "The number computed under this paragraph for a subsequent fiscal year is the difference (if any) between the maximum number of visas which may be issued under section 1153(b) of this title (relating to employment-based immigrants) during the previous fiscal year and the number of visas issued under that section during that year."; and 8 U.S.C. § 1153 (d)(2)(C) **Worldwide level of employment-based immigrants** "The number computed under this paragraph for a subsequent fiscal year is the difference (if any) between the maximum number of visas which may be issued under section 1153(a) of this title (relating to family-sponsored immigrants) during the previous fiscal year and the number of visas issued under that section during that year. See also ECF 19, Plaintiffs' motion for preliminary injunction ("In creating the roll-over system, Congress intended to allow both family-based and employment-based categories to maximize the use of the prescribed numbers by allowing them to roll back-and-forth until they have all been used, avoiding visa wastage, and reducing backlogs to the extent possible.") Thus, even if the Court's equitable jurisdiction is properly invoked, its authority to craft equitable relief ends where Congress has already spoken. *United States v. Oakland Cannabis Buyers' Co-Op*, 532 U.S. 483, 496 (1983). Congress has spoken here, and numerous courts have recognized this statutory barrier in the visa eligibility context. Indeed, the Supreme Court has explained that, "[t]he power to make someone a citizen of the United States

has not been conferred upon the federal courts, like mandamus or injunction, as one of their generally applicable equitable powers." *INS v. Pangilinan*, 486 U.S. 875, 883–84 (1988) (quoting *Hedges v. Dixon County*, 150 U.S. 182, 192 (1893).

Here, Plaintiffs do not dispute that Congress requires USCIS to rollover unused EB visas, and they are not arguing that USCIS has suspended processing of visa applications. USCIS continues to adjudicate and process adjustment of status cases. Rather, Plaintiffs ask the court to impose their preference to change the EB program because they do not like the program enacted by Congress, and they are not happy where they are in the visa line. But Plaintiffs' remedy to change the program is with Congress, not the Court.

Finally, whereas any unused DV numbers expire after September 30, Plaintiffs acknowledge that unused EB visa numbers rolled over into the next year allows the EB applicant to maintain his or her priority in line. ECF 19, pp. 3, 9-10 (EB visas roll over to the family sponsored program; if Plaintiffs' EB visas are not adjudicated by September 30, they "risk waiting months or possibly years before becoming permanent residents.").

        Respectfully submitted,
        Jonathan F. Lenzner
        Acting United States Attorney

        _____/s/_____
        Vickie E. LeDuc (Bar No. 805577)
        Assistant United States Attorney
        36 S. Charles Street, Fourth Floor
        Baltimore, Maryland 21201
        410-209-4800
        Vickie.LeDuc@usdoj.gov
        *Counsel for Defendants*

## **CERTIFICATE OF SERVICE**

I certify that on September 27, 2021, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF System, which will send notice of such filing to all counsel.

_____/s/_____
Vickie E. LeDuc
Assistant United States Attorney
